# CHARLESTON.

### STATE v. DICKEY.

### (BRANNON, JUDGE, *dissenting.*)

### Submitted February 8, 1899—Decided April 8, 1899.

1. INSTRUCTIONS—*Evidence—Error—Criminal Law.*
   An instruction which assumes an important and material fact as true, which is not conceded in the case, and which the evidence does not tend to prove, should not be given to the jury· (p. 322.)

2. INSTRUCTIONS—*Evidence—Criminal Law—Error.*
   It is error for the trial court to give instructions prejudicial to· the accused, on the trial of a felony case, which are not warranted by the evidence.   (p. 323.)

3. INSTRUCTIONS—*Criminal Law—Evidence—Error.*
   Where the testimony shows that the deceased came to his death from a blow on. the head caused by a rock thrown by the prisoner, but that immediately preceding the act of throwing this. rock the prisoner had been knocked to his hands and knees by a blow to the back from a rock thrown by deceased, it was error to instruct the jury that "if the prisoner, with a deadly weapon in his possession, without any, or upon very slight, provocation, gives to another a mortal wound, the prisoner is *prima facie·* guilty of wilful, deliberate, and premeditated killing".   (p.322.)

Error to Circuit Court, Braxton County.

John Dickey was convicted of manslaughter, and brings. error.

*Reversed.*

W. E. R. BYRNE, for plaintiff in error.

EDGAR P. RUCKER, Attorney General, L. H. KELLY and. EDWIN M. KEATLEY, for the State.

ENGLISH, JUDGE:

On August 26, 1897, John Dickey was indicted in the· circuit court of Braxton County for the murder of James. Tanner, and on December 6, 1897, was found guilty of vol--

untary manslaughter; and thereupon the prisoner, by his counsel, moved the court to set aside the verdict of the jury and grant him a new trial because the verdict was contrary to the law and the evidence, which motion was overruled, and Dickey was sentenced to the penitentiary for the term of five years. During the trial the defendant excepted to certain rulings and opinions of the court, took several bills of exception, and obtained this writ of error.

The first error assigned and relied on by the plaintiff in error is as to the action of the court in permitting the prosecuting attorney to detail to the jury a conversation between himself and W. F. Frame, attorney for the prisoner, which took place in the prisoner's presence, relative to the manner in which the injury was inflicted upon James Tanner, the deceased. Among other things, it was stated that Dickey threw a rock and hit Tanner, who was still suffering from the wound. It does not appear from the testimony of the prosecuting attorney that he was present when the rock was thrown and the injury inflicted, or from whom or how he derived his information, but it does appear that Frame was counsel for the prisoner; and, if he obtained the facts by consultation with him, it would be regarded as a privileged communication, and, even if he obtained the facts from other parties, it would be mere hearsay. Frame would not have been allowed to state it to the jury himself in either event. The only theory upon which this evidence could be heard is based on the fact that the prisoner remained silent while these statements were made in his presence. Greenleaf (volume 1, section 197) states the law on this point thus: "Admissions may also be implied from the acquiescence of the party. But acquiescence, to have the effect of an admission, must exhibit some act of the mind, and amount to voluntary demeanor or conduct of the party. And, whether it is acquiescence in the conduct or in the language of others, it must plainly appear that such conduct was fully known or the language fully understood by the party before any inference can be drawn from his passiveness or silence." The prisoner was under arrest at the time this conversation occurred, charged with a grave offense, and the counsel he relied on for his defense was talking, and it would not be reasonable to expect he would

contradict his statements.  I do not think his silence under such circumstances should be used against him before the jury, and treated as acquiecsence.  It is held in *Douglass Case*, 20 W. Va. 770, that "the commonwealth had no right, in such trial, to prove the fact that the pistol wherewith the murdered man was shot was found, and when and where it was found, though it was found in consequence of statements as to where it was to be found, extorted improperly from the prisoner, or improperly made by the prisoner's attorney in violation of his duty to his client to keep secret professional communications made to him by his client."

It is next claimed that the court erred in refusing to grant the defendant time to procure the rock on which it was claimed the deceased fell after being struck by the rock thrown at him by the prisoner.  The witness Burton Hamrick was asked, "What became of the rock that Mr. Given showed you as the one that Mr. Tanner fell against?" and replied: "The rock was there quite a while.  I was there working about the river up until September.  We was hauling and banking logs there, and I picked the rock up, and carried it up and put it under a log, to keep some logs from rolling into the river."  He was then asked, "Do you know whether it is there yet or not?" and replied, "I could not say whether it is there yet." It appears that the point at which this difficulty occurred was 20 miles away.  Did the court err to the prejudice of the prisoner, in the circumstances, in declining to stop the trial and send for this rock?  There was no certainty the rock could be obtained if time was allowed to make the effort.  The trial court must be given some discretion in the conduct of a cause, and it does not appear that, in refusing to send for this rock, he prejudiced the prisoner or abused his discretion.

It is next claimed that the court erred in giving, at the instance of the State, instruction No. 1, which reads as follows: "The court instructs the jury that a man is presumed to intend that which he does, or which is the immediate or necessary consequence of his act, and if the prisoner, with a deadly weapon in his possession, without any, or upon very slight provocation, gives to another a mortal wound, the prisoner is *prima facie* guilty of wilful deliberate and premeditated killing, and the necessity rests upon him of

showing extenuating circumstances; and unless he proves such extenuating circumstances, or the circumstances appear from the case made by the State, he is guilty of murder in the first degree." This instruction, I think, correctly states the law; but, in my opinion, the defendant's objection should have been sustained to it. To make this instruction relevant, it must appear that the rock was thrown by prisoner upon very slight provocation. On this point, Frank Given, who was present when the difficulty occurred, and testifies in the case, states that: "Tanner threw out the rocks in his hands at the prisoner, and struck him in the back, right between the shoulder blades, and knocked him down. He started to go on his hands, and maybe on his knees. As John (meaning prisoner) raised, before he got straightened up, he threw this rock that hit Tanner." The prisoner's back was evidently turned, or he would not have been struck between the shoulder blades; but does this testimony show that the provocation was very slight, or does it show that the prisoner had this rock in his possession when he received the blow? He may have seized the rock, while on his hands and knees, so far as the evidence shows; and the instruction clearly does not refer to the knife as the deadly weapon in his possession, because the mortal wound was not given with the knife. The question as to whether the provocation given the prisoner was slight or otherwise was an important factor in this case, bearing directly upon the prisoner's right to defend himself, and it was a question for the jury to determine. In the case of *Boswell* v. *Com.* 20 Grat.860,it was held that "an instruction which assumes an important fact as true, or is calculated to mislead the jury, should not be given." In *State* v. *Robinson*, 20 W. Va. 714, this Court held that "an instruction which assumes an important and material fact as true, which is not conceded in the case, should not be given to the jury." So, also, in *State* v. *Cross*, 42 W. Va. 253, (24 S. E. 996,) this Court held. "It is error for the trial court to give instructions prejudicial to the accused, on the trial of a felony case, which are not warranted by the evidence." In view of these authorities, as applied to the facts presented by the record, I hold that said instruction No. 1 should have been rejected by the court.

The prisoner is also prejudiced by instruction No. 6 given at the instance of the State. It reads thus: "The court instructs the jury that the bare fear on the part of John Dickey, the defendant, that James Tanner, the deceased, intended to do him great bodily injury, however, well grounded, unaccompanied by any overt act on the part of said Tanner indicative of such intention, would not warrant the killing of the said Tanner by said Dickey by way of prevention. To warrant said Dickey in killing the said Tanner, there must have been some overt act of said Tanner indicative of imminent danger to the said Dickey at the time, and the acts of the said Tanner must have been such as, under all the evidence and circumstances of the case, convince the jury that the defendant had reasonable ground to believe, and did believe, the danger imminent, and that the killing of said Tanner was necessary to preserve his own life, or to protect him from great bodily harm." This instruction is certainly well calculated to mislead the jury. No evidence is found in the record on which to base the proposition of bare fear of harm, unaccompanied by any overt act upon which such fear is based. The assumption here is that there was bare fear, unaccompanied by any over act; but how can this be reconciled with the fact that, when the prisoner's back was turned, he was brought to his hands and knees by a rock thrown by the deceased? And when the prisoner resents it by throwing one back, the evidence shows that Tanner was stooping, evidently to get a second rock, which, if he had been allowed to get, might have resulted in the death of Dickey. Was the prisoner, then, acting from bare fear, unaccompanied by any overt act? If not, it was error to assume the fact, and incorporate it in the instruction, before the jury had an opportunity of passing on the question. The assumption of this fact in the instruction would have a tendency to lead the jury to the conclusion that the court thought the prisoned acted as the result of bare fear, and not prompted by the blow in the back which felled him to the earth.

It is also claimed that the court erred in excluding from the jury the affidavit of J. F. Given, offered by the defendant in connection with the cross-examination of L. H. Kelly. I cannot see that the defendant was prejudiced

by this action, as the testimony of Given was given before the jury, and ample opportunity afforded to examine him.

The State also offered in evidence, in connection with the testimony of Jack Friend, a plot or diagram purporting to show the raft, river, and bank where the difficulty occurred. To this the defendant objected. The objection was overruled, and said plat or diagram was permitted to go to the jury as evidence. This is claimed to be error on the part of the court, but I cannot see that the prisoner was prejudiced by this action of the court.

It is also claimed that the court erred in overruling the motion of the prisoner to set aside the verdict and grant him a new trial, but, as this involves a discussion of the testimony, we decline to consider this assignment of error, as the case will be remanded. For the reasons above stated, the judgment complained of is reversed, the verdict set aside, and a new trial awarded.

BRANNON, JUDGE, (*dissenting*) :

I am incompetent to comprehend how it is error to give an instruction held sound law in *State* v. *Cain*, 20 W. Va. 681, and often since, when the theory presented by it is fairly a subject of inquiry by the jury, under the evidence. Instruction No. 1 states a general proposition of law. The evidence shows that the parties had a lawsuit, Dickey claiming something of Tanner, and angry at him; and Dickey made threats of bouncing a rock off Tanner's head. They met in the presence of Given and Friend, and quarreled,—Dickey commencing the quarrel,—and came to blows. Tanner was killed by Dickey with a blow of a rock on the head. It was a question for the jury whether that blow was given with or without provocation. JUDGE ENGLISH uses Given's evidence to show that Tanner struck Dickey in the back with a rock, and thus finds there was severe provocation, and says, therefore, an instruction presenting the question whether there was or was not provocation was improper; but, very strangely, JUDGE ENGLISH forgets altogether Friend's evidence. He shows no such provocation. He says that, when Tanner told Dickey he had once paid him four dollars for nothing, Dickey called him a

"God-damned liar," and drew his coat to fight. Given agrees with Dickey thus far. Friend says that they came to blows, when Tanner ran. Dickey followed him, open knife in hand, as Dickey admitted, and Friend saw no blow in the back from Tanner to Dickey. There was evidence to show that Given himself contradicted this blow in the back by not mentioning it when narrating the occurrence, just afterwards, when he said both Tanner and Dickey threw rocks so nearly together that he could not tell which threw first. This was a different version. The State openly contested his credit before the jury. Thus, the conflicting versions of the tragedy coming from Given and Friend, bearing on the alleged provocation from Tanner's striking Dickey in the back with a rock were before the jury, and the credibility of the two men, and the question whether, from his threats, it was likely Dickey acted without provocation. The jury was bound to pass on this question. This was the point of debate between the state and the defendant. The instruction did not assume there was no provocation, but said to the jury, in general terms, that if there was no provocation, and death was inflicted with a dangerous weapon, it would be in law murder; and, logically, if there was such sufficient provocation, it would not be murder. It did not hint that in the judge's opinion there was no provocation, or very slight, but left it with the jury to say whether the facts shown by the evidence fit or suited the instruction. How could it mislead a jury of ordinary sense? This point was not seen by counsel. It seems to me hard to see. Again, as the jury ignored the charge of murder, what has this instruction to do with the case? It bore only on the murder feature. If error, it is harmless, and not cause for reversal.

With regard to instruction No. 6: Judge English goes on the erroneous idea that Given's evidence is to be taken as conclusive to show an overt act in a blow in the back of Dickey given by Tanner. But was that blow given, was a question for the jury, under the conflicting versions of the occurrence as given by Friend and Given.

And how can Judge English reverse the circuit judge for the evidence given by the prosecuting attorney? He said only that Dickey's counsel, in Dickey's presence, stated

that Dickey hit Tanner with a rock, and Dickey remained silent. The evidence was admissible. But suppose it was not; how could it hurt Dickey, when he admitted the same thing on the witness stand? It was not questioned.

To overthrow verdicts and frustrate criminal justice on such light grounds seems to bring criminal procedure into odium and reproach, and increase grave crime. I cannot see my way to agree to this judgment, but, as three judges see it plainly, I may be dull and obtuse. It seems to me to be so plain that lawyers ought not to differ upon it.

*Reversed.*