# CHARLESTON.

### STATE v. STOCKTON.

Submitted March 18, 1924.   Decided September 9, 1924.

1.  ARREST—*May Arrest, or Cause Arrest of, Persons Engaged in
    Breach of Peace in His Presence.*

    A justice of the peace, under section 221 of chapter 50 of
    the Code, has the right to arrest, or cause to be arrested, per-
    sons engaged in a breach of the peace committed in his pres-
    ence, and to have said offenders brought before him for trial,
    and in pursuance of his authority under said action, he has
    the authority to order any person to carry out his orders.
    (p. 48).

    (Arrest, 5 C. J. § 26).

2.  HOMICIDE—*Private Person Making Arrest at Command of Jus-
    tice of Peace May Exercise Right of Self-Defense, Even
    Though Belief That Life Endangered May Prove to be
    Groundless.*

    When a private person is commanded by a justice of the
    peace to arrest and bring before him persons engaged in a
    breach of the peace committed in the presence of said jus-
    tice, such person so commanded is bound under the law to
    obey the orders of the justice, and in so doing such person is
    protected by the law, and, without a warrant for the arrest
    of the offenders, he may enter their premises, and in a legal
    manner execute said commands, and if, while he is attempting
    to execute said commands upon one he has been commanded
    to arrest, he is attacked by him in such a manner or under
    such circumstances as to furnish reasonable grounds for ap-
    prehending a design to take away his life, or to do him
    some great bodily harm, and there is reasonable grounds for
    believing the danger imminent that such design will be accomp-
    lished, and he has reasonable grounds to believe, and does

believe, such danger is imminent, he may act upon such appearances, and, without retreating, kill his assailant, if he has reasonable grounds to believe, and does believe, that such killing is necessary in order to avoid the apparent danger; and the killing under such circumstances is excusable, although it may afterwards turn out that the appearances were false, and that there was in fact neither design to do him some serious injury nor danger that it would be done; but of all this the jury must judge from all the evidence and circumstances of the case.  (p. 48).

(Homicide, 30 C. J. § 256).

NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

Error to Circuit Court, Boone County.

J. F. Stockton was convicted of voluntary manslaughter, and he brings error.

*Reversed, and remanded for new trial.*

B. J. *Pettigrew,* for plaintiff in error.

E. T. *England,* Attorney General, and R. *Dennis Steel;* Assistant Attorney General, for the State.

McGINNIS, JUDGE:

Defendant obtained a writ of error to a judgment of the circuit court of Boone County, wherein he was sentenced to one year imprisonment upon the verdict of a jury finding him guilty of voluntary manslaughter. We will make no comments upon the evidence further than is necessary to disclose the errors assigned.

It appears that on the 12th day of August, 1922, there was a disturbance of the peace at the town of Valco in said county, and that the justice of the peace who maintained an office in said town and lived a short distance therefrom was informed of the disturbance. He came to the town of Valco for the purpose of quieting the disturbance and arresting the persons involved therein. Soon after he arrived, and while he was on the store porch of the coal company which operated a coal plant at that place, he saw one Dave Crockett chasing a woman with a rock in his hand. He called upon some of the persons present on this store porch to go down and arrest this man Crockett and they refused to go, saying that

they were unarmed, and the justice of the peace then called upon the defendant, Stockton, who was at the time at his home which was near the store porch, and told him to get a gun and go down and arrest these people, who were engaged in this disturbance of the peace, naming one Casto and the said Dave Crockett.

The defendant in pursuance of the order of the justice, procured a pistol and went down a short distance from where he was at the time to the house of one Clevenger, where he found the man Casto and arrested him and took him before the justice, who turned him over to some other parties who were present; and the justice again commanded the defendant to go down and arrest Dave Crockett who was at the time, in the language of the justice, ''raising sand down there around the house.'' Stockton proceeded to the residence of Crockett and about the time he got there Crockett came out of his house with a chair in his hands. All that was said at the time by the prisoner and the deceased was not understood by the other witnesses who saw the shooting, the distance being too great or the voices too low, all of the witnesses except the defendant being some distance away, the nearest being about sixty feet from the point where the defendant attempted to make the arrest. It appears that when the defendant approached Crockett and demanded that he come with him, and told him that he had been authorized by the justice to arrest him and take him before the justice for being drunk and disorderly, Crockett refused to go, holding the chair. As to whether or not he advanced toward the officer with the chair there seems to be some conflict of testimony. However, it is undisputed that the defendant attempted to arrest him and he refused to go with the defendant, saying he was not going anywhere; and a number of witnesses, both for the State and the defense, stated that he advanced in the direction of the defendant with the chair, and as stated by the defendant, he threw his hand in his hip pocket and was attempting, apparently, to draw something therefrom. According to the testimony of the defendant, deceased ordered him to stop while he was approaching and threatened to knock his brains out, and at the time he advanced upon him, deceased had his hand in his hip pocket and threatened to

kill the defendant. The defendant then presented his pistol and told the deceased that under the order of the justice he demanded his surrender and that he had come to arrest him; that he wanted him to come with him to the justice, which deceased refused to do and advanced toward the prisoner with a chair held in a threatening manner.

The prisoner presented his pistol and ordered him to stop, which he did, and placed the chair on the ground and threw his hand to his hip pocket and said, "God damn you, I will kill you", and, that while Crockett was advancing upon him, he fired one shot aimed low, which shot took effect in one of Crockett's legs. This shot did not seem to stop the deceased; he kept advancing upon the defendant, the defendant fired two other shots each of which entered the left side of the deceased and from the effects of which he died within a few days afterwards.

The defendant was tried and found guilty of voluntary manslaughter and sentenced to the penitentiary for one year as stated above.

There are several errors assigned by counsel for the defendant but we do not deem it necessary to go into any of them except the giving of improper instructions to the jury on behalf of the state over the objection of the defendant and the refusal of the court to give to the jury proper instructions offered by the defendant. The state's instruction number one, is as follows:

> "The Court instructs the jury that if they believe from the evidence that the prisoner was not a peace officer and had no warrant for the arrest of the deceased at the time of the shooting, that the prisoner had no legal right to arrest the deceased, and the deceased had a right to resist the arrest when attempted by the prisoner, with reasonable force, proportioned to the injury attempted upon him, but no more. And if the jury find from the evidence that the prisoner attempted to arrest the deceased and the deceased resisted such arrest, or refused to be arrested, but did not use any more force than was necessary to prevent such arrest, and did not attack or offer to attack the prisoner in such a manner as to give him, the prisoner, good grounds for believing that he was

> in danger of death or great bodily harm at the
> hands of the deceased, then you should find the
> prisoner guilty of one of the offenses charged in
> the indictment, but not however, of murder in first
> degree.''

. We are of the opinion that the court erred in giving this
instruction to the prejudice of the defendant. This instruc-
tion seems to have been given upon the theory that by reason
of the fact that the defendant did not have in his possession,
at the time, a warrant for the arrest of the said Crockett then
he was in fault; that the deceased had the right to defend
himself from an illegal arrest; and this seems to have been
the theory upon which the case was tried.

The offense for which the defendant attempted to arrest
the deceased was committed in the presence of the justice, and
constituted a breach of the peace, and was an infraction of
the law over which the justice had jurisdiction. The justice
saw the deceased, with a stone in his hand, running after a
woman who was retreating from him. He had been informed
of a disturbance of the peace before he arrived upon the
scene of the trouble, and when he arrived the disturbance was
still going on and he saw a portion, at least, of it. It was
his duty as a conservator of the peace to suppress the trouble,
quiet the disturbance and to arrest, or cause to be arrested,
the persons engaged therein; and this he had the authority
to do under Section 221, Chapter 50 of the Code (Barnes'
1923) which is as follows:

> ''The proceedings before the justice shall be by
> warrant of arrest in the name of the State, except
> that when an offense of which the justice has
> jurisdiction is committed in his presence, or in that
> of a constable, either of them may forthwith ap-
> prehend the offender or cause him to be ap-
> prehended, and in such case the offender may be
> tried before the justice and dealt with according
> to law, without such warrant.''

Section 15 of Chapter 147 of the Code is as follows:

> ''If a person, being required by a justice, on
> view of a breach of the peace or other offense, to
> bring before him the offender, shall refuse or neg-

lect to obey the justice, he shall be punished as is
provided in the preceding section for refusing to
assist a sheriff; and if the justice declared himself
to be such, or if he be known to the offender,
ignorance of his office shall not be pleaded as an
excuse.''

This instruction tells the jury that if they believe from
the evidence that the prisoner was not a peace officer and had
no warrant for the arrest of the deceased at the time of the
shooting then the prisoner had no legal right to make the
arrest in the manner described in the instruction. The un-
contradicted testimony shows that the prisoner was not a
peace officer except as so authorized by the justice in this
particular case, and that he had no warrant when he at-
tempted the arrest; this instruction under the facts in this
case should not have been given.

The prisoner was vested with all the authority necessary
to carry out the commands of the justice; his disobedience
would have subjected him to fine and imprisonment, and
when he entered the yard of the deceased in obedience to his
appointment and order, he was protected and supported by
the power of the state, as much so as he would have been had
he at the time been an officer and had in his possession a legal
warrant for the arrest of the deceased. The justice had the
authority under section 221 of chapter 50 of the code to
cause the persons engaged in that disturbance in his presence
to be arrested and brought before him for trial. We do not
think the point raised by the attorney general in his brief
that the disturbance had subsided at the time the prisoner
was deputized, is supported by the facts in this case. At the
time the justice deputized the prisoner to arrest deceased he
was still ''raising sand'' around the house and the fact that
he had ceased to disturb the peace at the time the officer ar-
rived at the point where he attempted to make the arrest could
in no reasonable view of the law, nullify his appointment or
affect his authority to make the arrest. For the foregoing
reasons, the said instruction does not embody the law of this
case and the giving of the same to the jury was prejudicial
to the prisoner.

Instruction Number Two given for the state, is also bad.

This instruction embodies the law where a difficulty arises between two persons and both are in fault. In the present case the prisoner was not at fault at the time the difficulty arose, he was lawfully acting under the direct order of the justice and could in no sense be treated as being in fault under the facts in this case at the time he entered the yard of the deceased and attempted to make the arrest, and if he was resisted, he was not required to retreat. His duty was to arrest the deceased "peaceably if he could, forcibly if he must."

*State* v. *Garnett*, 60 N. C. 144, 84 Am. Dec. 359. *In re-Laing*, 127, Fed. 213.

He was performing a duty he did not seek but one he had been ordered to perform. There was no feeling of animosity on his part toward Crockett, he had but a short acquaintance with him, and he had had no trouble with him. He had been informed that Crockett was a dangerous man, and he was required by the justice to arm himself.

"An officer in the performance of his duty as such stands on an entirely different footing from an individual. He is a minister of justice, and entitled to the peculiar protections of the law. Without submission to his authority there is no security; and anarchy reigns supreme. He must of necessity be the aggressor, and the law affords him special protection. In his capacity as an individual he may take advantage of the 'first law of nature', and defend himself against assault; as an officer he has an affirmative duty to perform, and in the performance thereof he should, as long as he keeps within due bounds, be protected; sentimentalism should not go so far as to obstruct the due administration of the law, and brute force should not be permitted to obstruct the wheels of justice." Opinion of the court in *State* v. *Smith* 127 Iowa 524, 103 N. E. 944.

"An officer who is resisted by another whose arrest he is seeking to make can avail himself of the usual right of self-defense which permits an individual to use such force as may be necessary to protect himself from grievous bodily harm, or loss of life, but the protection which an officer is entitled to receive in making an arrest is a different thing from self defense although he may as a matter of course defend him-

self like any other person who is assaulted. The law does not stop here, but because he must of necessity be the aggressor and must press forward and accomplish his object the law throws around him a special protection." 2 R. C. L. 473.

The state's instruction No. 3, which was objected to by the prisoner and assigned as error seems to be in compliance with the law as enunciated in the twelfth point of the syllabus in the case of *State* v. *Cain*, 20 W. Va. 679. Notwithstanding the fact that an instruction embodying the same principles and almost in the identical words of this instruction was approved in the Cain case, and reaffirmed in *State* v. *Greer*, 22 W. Va. 800, and in a proper case is the law, yet do the facts in this case justify this instruction? In the case of the *State* v..*Dickey* 46 W. Va. 319 this court in passing upon instruction No. 6 in that case which embodies the law as decided in the twelfth point of the syllabus of the Cain case *supra*, and is practically the same as instruction No. 3 in the present case, held that "this instruction is certainly well calculated to mislead the jury. No evidence is found in the record on which to base the proposition of bare fear of harm, unaccompained by any overt act." In *State* v. *Robinson*, 20 W. Va. 714 this court held that an instruction which assumes an important and material fact as true which is not conceded in the case should not be given. This instruction assumes an important fact; that the prisoner acted from bare fear unaccompanied by any overt act. This assumption is not borne out by the evidence in the present case, and we hold that the court erred in giving this instruction.

In this case by reason of his deputation by the justice the defendant was an officer appointed for the purpose of arresting the deceased and was ordered to arrest him and bring him before said justice for trial, for the offense committed in the presence of said justice, and at the time he attempted to arrest the deceased he refused to be arrested, threatened the life of the defendant, saying he would knock his brains out, and at the time the deceased had in his hands a chair and he advanced on the defendant with his hand in his hip pocket telling defendant that he would kill him, and said he "was not going anywhere". The defendant states that he backed from him till he was against the fence and fired the

first shot low which took effect in deceased's leg, this did not stop deceased and he continued to advance and defendant fired the other shots which resulted in the death of the deceased. The court could not assume under these facts that the prisoner was actuated by bare fear that the deceased intended to commit murder or other atrocious felony and that it was unaccompanied with any overt act indicative of such intention.

Defendant's instruction No. 7 follows point seven of the syllabus in case of *State* v. *Cain, supra.*, and the court erred in refusing to give this instruction. It was evidently refused on the ground that the prisoner was in fault when attempting to arrest the deceased because of the fact that he had no warrant.

Instruction No. 8 offered by the defendant was properly refused. There is no evidence of a riot or unlawful assembly. The court did not err in refusing to give instruction No. 9 offered by the defendant. It is ambiguous and while it contains the principles involved in this case, it is calculated to mislead or confuse the jury. Stockton was ordered to arrest the deceased and not to assist any one to arrest him, he was commanded to arrest him and he was for that purpose an officer himself and as such was entitled to the protection of the law. Instruction No. 10 offered by the defendant and given as amended by the court, did not prejudice the prisoner, and the court did not err in amending the same and giving it as amended.

For the foregoing reasons the judgment of the court below must be reversed, the verdict of the jury set aside and the case remanded for a new trial.

*Reversed, and remanded for new trial.*