# Richmond.

## A. Floyd Mercer v. Commonwealth.

### March 22, 1928.

### Absent, Burks, J.

1. Homicide—*Degrees of Murder—First and Second Degree.*—Murder, in Virginia, is either murder in the first degree or murder in the second degree. This distinction is statutory.
2. Homicide—*Murder—Malice Essential.*—To constitute murder, either at common law or under the statute, malice is an essential constituent. Malice may be either express or implied.
3. Homicide—*Murder—Malice Implied.*—Malice is a *prima facie* inference from the very fact, for one must be presumed to have designed to do what he did, or what is the immediate and necessary consequence of his act, unless he can show the contrary.
4. Homicide—*Murder in Second Degree—Presumptions and Burden of Proof.*—When the Commonwealth has proven the commission of a homicide and has pointed out the accused as the criminal agent, then it may rest its case, and unless the accused shows circumstances of justification, excuse, or alleviation, a verdict of murder in the second degree will be warranted.
5. Homicide—*Murder—Presumption that Homicide is Murder in Second Degree—Instruction—Case at Bar.*—In the instant case, a prosecution for murder, the court instructed the jury that "every unlawful homicide in Virginia is presumed in law to be murder in the second degree. In order to elevate the offense to murder in the first degree the burden of proof is on the Commonwealth, to reduce the offense to manslaughter the burden of proof is on the prisoner."

   *Held:* No error where the evidence on the question of self-defense was conflicting.
6. Homicide—*Murder—Presumption that Homicide is Murder in Second Degree—When Instruction Inapplicable.*—In a prosecution for homicide, if the evidence of the Commonwealth or the uncontradicted evidence adduced by the accused shows that, at the time the overt act was committed, the accused was laboring under a reasonable apprehension of death or great bodily harm, an instruction that every unlawful homicide in Virginia is presumed in law to be murder in the second degree, and that in order to elevate the offense to murder in the first degree the burden of proof is on the Common-

wealth, and to reduce the offense to manslaughter the burden is on the principal, would be inapplicable.

7. HOMICIDE—*Instructions—Apprehension by Accused that He was in Danger of Serious Bodily Harm—Questions of Law and Fact—Case at Bar.*—An instruction offered by accused which assumed as an established fact that it reasonably appeared to the accused that he was placed in circumstances of agitation and peril at the time of the homicide, was clearly erroneous, and an amendment of the instruction by the trial court striking out this assumption was correct. Whether it reasonably appeared to the accused that he was placed in a situation of agitation and peril was a question of fact to be determined by the jury.

8. ARREST—*Officer Armed with a Warrant—Presumption that Officer will Discharge his Duty in a Lawful Manner—Instructions—Case at Bar.*—While it is a *prima facie* presumption of law that an officer, armed with a lawful warrant, who attempts to make an arrest in obedience to its mandate, or who attempts to make an arrest for an offense committed in his presence, will discharge his duty in a lawful manner, yet the mere fact that the jury are instructed to this effect does not constitute error. Nor is an instruction to this effect amenable to the criticism that the addition of the words "in any lawful manner" is indicative of the state of mind of the trial court, that the accused was acting in an unlawful manner.

9. HOMICIDE—*Instructions—Defendant's Belief of His Danger—Questions of Law and Fact—Case at Bar.*—In the instant case, a prosecution for homicide, the court was asked to instruct the jury that if they believed from the evidence that the defendant believed himself to be in danger on account of the words or threatening attitude of accused or his companion, the law did not require him to wait until he was actually shot at before acting in his own defense. The court amended the instruction by adding the word "reasonably" before the word "believed."

*Held:* That the instruction should not have been given, either as offered or as amended, as it unduly emphasized the words and attitude attributable to the deceased and infringed upon the prerogative of the jury as the sole judges of the reasonableness of the belief of the accused.

10. HOMICIDE—*Self-Defense—State of Fear of Accused—Overt Act on Part of Deceased.*—To warrant the killing of an adversary one cannot rely upon his state of fear. There must have been some overt act upon the part of the deceased indicative of imminent danger at the time. The bare fear that a man intends to commit murder, however well grounded, unaccompanied by any overt act indicative of such an intention, will not warrant killing the party by way of prevention.

11. HOMICIDE—*Self-Defense—Officer Attempting to Make Arrest—Duty to*

*Retreat—Case at Bar.*—In a prosecution for homicide, defendant was a game warden and at the time of the killing was seeking to apprehend deceased who had violated the game laws. Accused offered an instruction which told the jury that if the accused was discharging a lawful duty, in a lawful manner, he need not retreat, but might repel force by force, if need be, to the extent of slaying his adversary, and that this situation was justifiable self-defense. This instruction correctly expounds the law. The instruction, as given, in effect told the jury that the deceased must shoot at the accused before the accused would be warranted in defending himself. This is an incorrect statement of the law. Furthermore, the instruction deprives the accused of the right of acting upon appearances when threatened with danger.

12. HOMICIDE—*Instructions—Conflicting Instructions—Self-Defense.*—An instruction in a prosecution for homicide which in effect told the jury that the deceased must shoot at the accused before the accused would be warranted in defending himself, was in conflict with another instruction to the effect that where a man is threatened with danger, the law authorizes him to determine from appearances and the actual state of things surrounding him as to the necessity for resorting to force.

13. ARREST—*Public Officers—Protection Afforded Officer in Performance of Duty.*—Let it be once established that an officer is engaged in a lawful duty and is performing same in a lawful manner, then the law throws around him every protection to which he is entitled as a minister of justice. An officer, in the performance of his duty as such, stands on an entirely different footing from an individual. He is a minister of justice, and entitled to the peculiar protection of the law.

14. ARREST—*Resisting Arrest—Duty of Officer—Special Protection Allowed by Law.*—An officer who is resisted by another whose arrest he is seeking to make can avail himself of the usual rights of self-defense, which permit an individual to use such force as may be necessary to protect himself from grievous bodily harm, or loss of life, but the protection which an officer is entitled to receive in making an arrest is a different thing from self-defense, although he may as a matter of course defend himself like any other person who is assaulted. The law does not stop here, but, because he must of necessity be the aggressor and must press forward and accomplish his object, the law throws around him a special protection.

15. HOMICIDE—*Evidence—Admissibility—Physical Conditions—View.*—Physical conditions of the premises where a homicide is alleged to have occurred are generally relevant. When, however, there is an inspection of the scene where the crime is alleged to have been committed, it

must be shown what changes, if any, have taken place since the commission of the act.

16. HOMICIDE—*Evidence—Admissibility.*—Any evidence which tends to show the manner in which the homicide was committed is competent.

17. HOMICIDE—*Evidence—Physical Conditions—Hearsay Evidence as to Position of Gun Wads as Tending to Show the Deceased was in Flight when Killed—Case at Bar.*—In the instant case, a prosecution for homicide, the Commonwealth sought to rebut defendant's plea of self-defense by showing that the deceased was in flight at the time he received the fatal wound. The location of gun wads at the place of the crime was relied upon to support this theory.

*Held:* That if there was no change in the condition of the premises or in the original location of the gun wads, their location was competent evidence. But witnesses should be confined to information gathered from their own observations and not be permitted to base their conclusions upon statements made by others.

Error to a judgment of the Corporation Court of the city of Norfolk.

*Reversed.*

The opinion states the case.

*W. R. Ashburn, Paul W. Kear* and *W. H. Venable,* for the plaintiff in error.

*John R. Saunders,* Attorney-General, *Leon M. Bazile* and *Edwin H. Gibson,* Assistant Attorneys-General, and *James S. Barron,* for the Commonwealth.

CAMPBELL, J., delivered the opinion of the court.

The plaintiff in error was indicted in the Circuit Court of Princess Anne county, jointly with John T. Capps and William L. Birsh, for the murder of one Allen Lee Waterfield. On the petition of the accused, supported by affidavit, the Circuit Court of Princess Anne county, after a consideration of the petition, affidavits and testimony of witnesses, ordered a change

of venue, and transferred the case to the Corporation
Court of the city of Norfolk, where a trial was had on
the 22nd day of June, 1927.

Upon the trial, the accused, having elected to be
tried separately, was found guilty, by a jury, of murder
in the second degree, and sentenced to confinement in
the penitentiary for a term of ten years, and to that
judgment he had obtained this writ of error.

At the instance of the Commonwealth and over the
objection of the accused, the court gave this instruc-
tion:

"Every unlawful homicide in Virginia is presumed in
law to be murder in the second degree. In order to
elevate the offense to murder in the first degree the
burden of proof is on the Commonwealth, to reduce
the offense to manslaughter the burden of proof is on
the prisoner."

This action of the court is assigned as error. The
main objection urged to this instruction is that it
tells the jury that malice is an inference of law drawn
from the act of killing, and not an ingredient of fact
which requires proof of its existence.

[1] Murder, in Virginia, is either murder in the first
degree or murder in the second degree. This distinc-
tion is statutory.

Section 4393 of the Code is as follows: "Murder by
poisoning, lying in wait, imprisonment, starving, or by
any wilful, deliberate and premeditated killing, or in
the commission of, or attempt to commit arson, rape,
robbery, or burglary, is murder of the first degree. All
other murder is murder of the second degree."

[2] To constitute murder, either at common law or
under the statute, malice is an essential constituent.
Malice may be either express or implied.

In *Murphy* v. *Commonwealth,* 23 Gratt. (64 Va.) 960,

decided in March, 1873, the following instruction was made the basis of an assignment of error: "The court instructs the jury that the law is that malice may be implied from the deliberate use of a deadly weapon in the absence of proof to the contrary." Judge Moncure, delivering the opinion of the court, held that the instruction correctly expounds the law.

[3] In Exposition of the Law of Crimes and Punishments, page 55, Professor John B. Minor states the doctrine thus: "Malice is a *prima facie* inference from the very fact, for one must be presumed to have designed to do what he did, or what is the immediate and necessary consequence of his act, unless he can show the contrary."

This doctrine has been adhered to in *Lewis' Case*, 78 Va. 733; *Honesty's Case*, 81 Va. 291; *Muscoe's Case*, 86 Va. 451, 10 S. E. 534; *Horton's Case*, 99 Va. 853, 38 S. E. 184; *Pott's Case*, 113 Va. 733, 73 S. E. 470; and in *Sim's Case* (1922), 134 Va. 736, 115 S. E. 382. In the latter case, the trial court instructed the jury that "every homicide is presumed to be murder in the second decree and the burden of proving the elements necessary to elevate the crime to murder in the first degree is upon the Commonwealth, but on the other hand, in order to reduce the offense from murder in the second degree to manslaughter or excusable homicide, the burden is upon the prisoner."

In holding that the instruction correctly states the law, Judge Burks said: "Two objections were made to this instruction. The first is. that so much of the instruction as states that 'in order to reduce the offense from murder in the second degree to manslaughter or excusable homicide, the burden is upon the prisoner,' is not a correct statement of the law. This statement of the law is hoary with age and has been followed

without criticism or objection in this jurisdiction for nearly a century. A partial list of the cases in which it has been approved is given in the margin. If in its practical application it had proved unfair or injurious to persons accused of homicide, it is more than probable that the fact would long ago have been discovered by the bar and the bench. It has proven satisfactory in the administration of justice and not hurtful to those accused of homicide, and we have no disposition to depart from it."

[4-6] While we are of the opinion that this assignment is without merit, we are not unmindful of the strong argument advanced in the dissenting opinion of Wilde, J., in *Commonwealth* v. *York*, 9 Metcalf (Mass.) 93, 43 Am. Dec. 373, cited by counsel for the accused. In *Litton's Case*, 101 Va. 833, 44 S. E. 923, however, it is held that when the Commonwealth has proven the commission of a homicide and has pointed out the accused as the criminal agent, then it may rest its case, and unless the accused shows circumstances of justification, excuse, or alleviation, a verdict of murder in the second degree will be warranted.

Unquestionably there are cases when to give the instruction under consideration would be error. If the evidence of the Commonwealth or the uncontradicted evidence adduced by the accused shows that, at the time the overt act was committed, the accused was laboring under a reasonable apprehension of death or great bodily harm, then the instruction would be inapplicable. *Whitehurst* v. *Commonwealth*, 79 Va. 560.

In the instant case, we are unable to say the evidence is not conflicting, and the instruction given comes within the common law rule, which has been the rule of decision in this Commonwealth for nearly a century,

and, so far as we are advised, has not once been the vehicle of injustice.

[7] It is assigned as error that the court erred in amending instruction No. 2-A. This instruction, as offered by the accused, is as follows:

"If the jury should believe from the evidence that the accused shot the deceased under a reasonable belief that his own life was in danger, or that he was in danger of serious bodily harm, as the facts and circumstances reasonably appeared to him at the time, he was excusable in so doing, whether such danger was real or not. The question for the jury in this case is not whether the taking of the life of the deceased might have been safely avoided, but whether the accused (*in the circumstances of agitation and peril in which he was placed, as reasonably appeared to him*) might reasonably have believed, and did believe, it necessary to shoot as he did, resulting in the death of the deceased, in order to save his own life, or avoid serious bodily harm."

The amendment consisted in striking out the italicized portion of the instruction. As offered, the instruction was clearly erroneous, as it assumed as an established fact that at the time of the homicide it reasonably appeared to the accused that he was placed in circumstances of agitation and peril, thereby depriving the jury of a prerogative that belonged exclusively to it. As to whether it reasonably appeared to the accused at the time of the homicide that he was placed in a situation of agitation and peril was a question of fact to be determined by the jury from the evidence in the case and the instructions given by the trial court.

Clearly, it was proper to strike out this portion of this instruction, and no error was committed by the trial court in so doing.

The next assignment of error calls in question the

action of the court in giving the jury the following instruction:

"The jury are instructed that if they believe from the evidence that at the time and place of the shooting of the defendant, Mercer was a State game warden, then by virtue of that office he was an officer of the law of the State of Virginia, and was authorized and empowered to arrest and detain the deceased; that he had the lawful right to be at the place of the shooting, and that it was his duty, under the law, to attempt to arrest the deceased, in any lawful manner."

[8] As offered, the language "in any lawful manner" was omitted. While it is a *prima facie* presumption of law that an officer, armed with a lawful warrant, who attempts to make an arrest in obedience to its mandate, or who attempts to make an arrest for an offense committed in his presence, will discharge his duty in a lawful manner, yet the mere fact that the jury are instructed to this effect does not constitute error. Nor do we think the instruction is amenable to the criticism that the addition of the words, "in any lawful manner," is indicative of the state of mind of the trial court, that the accused was acting in an unlawful manner. See *Looney's Case*, 115 Va. 931, 78 S. E. 625, on the question of *prima facie* presumption of the lawful discharge of his duty by an officer.

[9] The following instruction requested by the accused was refused by the court:

"The court instructs the jury that if they believe from the evidence that the defendant believed himself to be in danger of death, or great bodily harm, on account of the words or threatening attitude of Bonney or Waterfield, the law does not require him, before acting in his own defense, to wait until he is actually shot at, but under the law he is justified in shooting

himself, without waiting to be fired at, if he believes he is about to be shot at."

The court amended the instruction by adding the word "reasonably" before the words "believed himself" in the second line of the instruction, and struck out the words "or threatening attitude."

We are of the opinion that this instruction should not have been given, either as offered or as amended. It unduly emphasized the words and attitude attributable to the deceased and infringed upon the prerogative of the jury as the sole judges of the reasonableness of the belief of the accused.

[10] To warrant the killing of an adversary one cannot rely upon his state of fear. There must have been some overt act upon the part of the deceased indicative of imminent danger at the time. "The bare fear that a man intends to commit murder, however well grounded, unaccompanied by any overt act indicative of such an intention, will not warrant killing the party by way of prevention." *Litton's Case*, 101 Va. 850, 44 S. E. 923.

[11] It is next insisted that the trial court erred in amending the following instruction offered by the accused:

"If the jury believe that the accused was in the discharge of a lawful duty, engaged in a lawful act, he need not retreat but may repel force by force, if need be, to the extent of slaying his adversaries. This is justifiable self-defense."

The amendment of the court makes the instruction read thus:  "If the jury believes that the accused was in the discharge of the lawful duty to arrest the deceased, he need not retreat, and if the deceased seeks to prevent the lawful execution of said duty *by shooting at* the accused, then the accused in turn may become

the aggressor, even to the extent of taking the life of the deceased, if such action on his part is reasonably deemed necessary to protect himself from death or serious bodily injury."

The accused, Capps and Birsch, were duly commissioned game wardens, under the supervision of the State Commission of Game and Inland Fisheries, and at the time of the commission of the homicide were in quest of violators of the game laws.   It is undisputed that the deceased and Bonney, the companion of the deceased, who was also killed, had violated the game laws by shooting ducks after dark, and were in the act of placing same in an automobile when apprehended by the officers.

As offered, the instruction told the jury that if the accused was discharging a lawful duty, in a lawful manner, he need not retreat, but may repel force by force, if need be, to the extent of slaying his adversary, and that this situation was justifiable self-defense. This instruction correctly expounds the law.   The instruction, as given, in effect told the jury that the deceased must shoot at the accused before the accused would be warranted in defending himself.   This is an incorrect statement of the law.   Furthermore, the instruction deprives the accused of the right of acting upon appearances when threatened with danger.   The court had already instructed the jury as follows:

[12] "The court further instructs the jury that where a man is threatened with danger, the law authorizes him to determine from appearances and the actual state of things surrounding him as to the necessity for resorting to force; and, if he acts from reasonable and honest conviction, he will not be held criminally responsible for a mistake as to the actual danger, where other judicious men would have been mistaken; for,

when one attempts to injure another it gives the injured man the right to make use of such means to prevent injury as his behavior and situation make necessary."

This latter instruction was in direct conflict with the amended instruction No. 5, as given by the court.

[13] Let it be once established that an officer is engaged in a lawful duty and is performing same in a lawful manner, then the law throws around him every protection to which he is entitled as a minister of justice.

The rights and duties of and the protection afforded an officer of the law are well stated in a quotation from *State* v. *Smith*, 127 Iowa 524, 103 N. W. 944, 70 L. R. A. 246, 109 Am. St. Rep. 402, 4 Ann. Cas. 758, found in *State* v. *Stockton*, 97 W. Va. 46, 124 S. E. 509, as follows: "An officer, in the performance of his duty as such, stands on an entirely different footing from an individual. He is a minister of justice, and entitled to the peculiar protection of the law. Without submission to his authority there is no security, and anarchy reigns supreme. He must, of necessity, be the aggressor, and the law affords him special protection. In his capacity as an individual he may take advantage of the 'first law of nature,' and defend himself against assault; as an officer, he has an affirmative duty to perform, and in the performance thereof he should, so long as he keeps within due bounds, be protected. Sentimentalism should not go so far as to obstruct the due administration of law, and brute force should not be permitted to obstruct the wheels of justice."

[14] "An officer who is resisted by another whose arrest he is seeking to make can avail himself of the usual rights of self-defense, which permit an individual

to use such force as may be necessary to protect himself from grievous bodily harm, or loss of life, but the protection which an officer is entitled to receive in making an arrest is a different thing from self-defense, although he may as a matter of course defend himself like any other person who is assaulted. The law does not stop here, but, because he must of necessity be the aggressor and must press forward and accomplish his object, the law throws around him a special protection." 2 R. C. L. 473.

There are other assignments of error dealing with the action of the court in giving and refusing instructions, but we are of the opinion that they are without merit.

It is also assigned as error that the court erred in permitting police officers Land and Sparrow to testify in behalf of the Commonwealth, that on the Sunday following the commission of the homicide on Friday night, they went to the scene of the shooting with Lonnie Waterfield, a son of the deceased; that young Waterfield had shown them where the bodies of Bonney and Allen Lee Waterfield were found, where the automobile was parked, where he threw himself upon the ground when the shooting began and pointed out the location of the officers; that, in line with where young Waterfield told them his father fell, they found some gun wads, and in line with where they were told the game wardens stood and young Waterfield stood, they also found gun wads. The theory of the Commonwealth is that this evidence was admissible to show the manner of killing. It is urged by the accused that the evidence is hearsay.

[15–17] In Wharton's Criminal Ev. (10th ed.), page 1742, it is said: "Physical conditions of the premises where the homicide is alleged to have occurred are generally relevant." When, however, there is an in-

spection of the scene where the crime is alleged to have been committed, it must be shown what changes, if any, have taken place since the commission of the act.    It must be conceded that any evidence found upon the scene of the crime which would tend to point out the perpetrator thereof is competent evidence.  This being true, it naturally follows that any evidence which tends to show the manner in which the act was committed is competent evidence.    In the case at bar, the accused relied upon self-defense.    The Commonwealth sought to rebut the plea of self-defense by showing that the deceased was in flight at the time he received the fatal wound, and that the accused was in no danger of death or great bodily harm.    One bit of evidence relied upon to support this theory was the location of the gun wads. If there was no change in the condition of the premises or in the original location of the gun wads, we think their introduction competent evidence.    We are of the opinion, however, that the witnesses should be confined to information gathered from their own observations and not be permitted to base their conclusions upon statements made by others.    In other words, while it is permissible for the officers to state the location of the gun wads upon the scene of the alleged crime, the burden is upon the Commonwealth to connect the accused with the gun wads, and to show by evidence other than that acquired by the officers by hearsay, the location of the body of the deceased after the shooting.

For the reasons indicated, the judgment complained of must be reversed, the verdict of the jury set aside, and the case remanded for further proceedings.

*Reversed.*