460 S.E.2d 742

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**James E. FORSYTHE, Defendant Below, Appellant.**

No. 22578.

Supreme Court of Appeals of West Virginia.

Submitted May 16, 1995.

Decided July 13, 1995.

---

Rebecca M. Bell, Bell & Griffith, Princeton, for appellant.

Darrell V. McGraw, Jr., Atty. Gen., Mary Blaine McLaughlin, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

This case is before this Court upon an appeal from the final order of the Circuit Court of Mercer County, West Virginia, entered on April 14, 1994. Pursuant to that order, the circuit court entered a judgment of conviction against the appellant, James E. Forsythe, following a jury verdict, for the misdemeanor offense of obstructing an offi-

cer. The appellant was sentenced to 480 hours of confinement in the Mercer County Jail and fined $100, plus court costs. The confinement in jail was scheduled to be served pursuant to a schedule which would permit the appellant to complete his college courses.

This Court has before it all matters of record and the briefs and argument of counsel. For the reasons set forth below, we affirm the judgment of conviction.

I.

On the evening of November 24, 1993, the police department in Princeton, Mercer County, West Virginia, received a call for help from Tammy Forsythe, the appellant's wife. Ms. Forsythe stated that the appellant was depressed and upset and was talking of harming himself. Officer Donald E. Ingram, Jr. was immediately dispatched to the Forsythe home and, upon arrival, was told by a distressed Ms. Forsythe that her husband had become upset over the loss of financial assistance concerning his college courses. Officer Ingram left Ms. Forsythe in the living room of the home and found the appellant in the bedroom, crying and noticeably intoxicated. Officer Ingram attempted to converse with the appellant.

In the meantime, Officers Paul Powell and· Richard Mann arrived at the home and talked with Ms. Forsythe. Soon after, Ms. Forsythe went to the kitchen to answer the telephone. Importantly, the record indicates that the Forsythe home is quite small, with the living room and kitchen being separated by a "divider." According to the evidence of the State, the appellant then entered the kitchen, became agitated at Ms. Forsythe for calling the police and stated: "I'll kill you bitch." At that moment, according to the State, he swung his fist at Ms. Forsythe, missed her, and hit the kitchen wall.

Those events were observed by Officer Ingram who had followed the appellant from the bedroom. Officers Powell and Mann testified that, although they did not see the appellant swing his fist at Ms. Forsythe, they heard the appellant say "I'm gonna kill you bitch" and also heard the sound of the strik-

ing of the wall. Officer Powell added that he observed Ms. Forsythe step or jerk back from the kitchen wall.

After the striking of the wall, Officer Powell stepped into the kitchen and told the appellant that he was under arrest. A struggle ensued involving the appellant and the three officers. Thereafter, the appellant was handcuffed and taken into custody.[1]

The appellant was charged with the misdemeanor offenses of assault, *W.Va.Code*, 61–2–9(b) [1978], and obstructing an officer, *W.Va. Code*, 61–5–17 [1931].[2] His trial was conducted in the Circuit Court of Mercer County in March, 1994.

Although the appellant did not testify at trial, Ms. Forsythe testified that the appellant indicated he simply wanted to be left alone during the night in question and was not trying to hit her. She also stated that the appellant did not resist arrest. The jury returned a verdict of not guilty upon the assault charge. However, the jury found the appellant guilty of obstructing an officer. The appellant's post-trial motions were denied, and this appeal followed.

1. During the trial, Officer Ingram described the above events as follows:

[T]wo other officers had arrived, Sergeant Powell and Officer Mann, and I continued talkin' with James and the phone rang. Tammy, his wife, ... went into answer the phone, and while she was on the phone he got up off the bed, went into the kitchen area and made some remark about her callin' the law and he would kill her. And at that time James took a swing at her and missed, strikin' the wall there, right there in the vicinity of where she was standin'.
Q. Do you know what he said, do you recall?
A. I believe the words he used was [sic] 'I'll kill you bitch', and he swung and missed, and at that time Officer Powell advised him he was under arrest. He started backin' up to the kitchen sayin' somethin' that we'll have to take him, come and get me, and to that nature. We proceeded forward. I grabbed one arm and Officer Powell grabbed the other arm and we kind of went into a—ruckus. He was resisting arrest, refused to cooperate. We were tryin' to avoid it, calm him down, you know, quit resistin', you're under arrest, you—you got to go, and he wouldn't cooperate at—at all. We milled around in the kitchen. I think we knocked a table over, broke a chair or somethin', and ended up on the floor, and he's swin-

## II.

The appellant argues before this Court that because the arresting officer, Paul Powell, did not personally observe the appellant swing his fist at Ms. Forsythe, the alleged offense was not committed in that officer's presence, and, therefore, the arrest was unlawful. Consequently, argues the appellant, because the arrest was unlawful, the appellant could not be guilty of obstructing an officer "in the lawful exercise or discharge of his official duty," within the meaning of *W.Va.Code*, 61–5–17 [1931]. *See* n. 2, *supra.*

In *Simon v. Department of Motor Vehicles*, 181 W.Va. 267, 382 S.E.2d 320 (1989), this Court held in the syllabus: "Probable cause to make a misdemeanor arrest without a warrant exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to warrant a prudent man in believing that a misdemeanor is being committed in his presence." *See also* syl. pt. 1, *Cunningham v. Bechtold*, 186 W.Va. 474, 413 S.E.2d 129 (1991). That syllabus followed our holding in syllabus point 3 of *State v. Thomas*, 157 W.Va. 640,

gin' and he struck me a couple of times, cussin' usin' foul language. We eventually got him subdued, handcuffed him and placed him in the police car and took him to the Police Department.

2. *W.Va.Code*, 61–2–9(b) [1978], provides:

(b) *Assault.*—If any person unlawfully attempts to commit a violent injury to the person of another or unlawfully commits an act which places another in reasonable apprehension of immediately receiving a violent injury, he shall be guilty of a misdemeanor, and, upon conviction, shall be confined in jail for not more than six months, or fined not more than one hundred dollars, or both such fine and imprisonment.
*W.Va.Code*, 61–5–17 (1931), provides:
Any person who by threats, menaces, acts or otherwise, shall forcibly or illegally hinder, obstruct, or oppose, or attempt to obstruct or oppose, or shall counsel, advise or invite others to hinder, obstruct or oppose any officer in this State (whether civil or military) in the lawful exercise or discharge of his official duty, shall, for every such offense, be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than fifty nor more than five hundred dollars, and may, in the discretion of the court, be imprisoned not exceeding one year.

203 S.E.2d 445 (1974), that "[a] municipal police officer has no authority, at common law or by statute, to make a warrantless arrest for a misdemeanor of a person who does not commit such an offense in his presence." *State v. Hefner,* 180 W.Va. 441, 445, 376 S.E.2d 647, 651 (1988); *State v. Craft,* 165 W.Va. 741, 754 n. 5, 272 S.E.2d 46, 54 n. 5 (1980). *See generally,* 2A M.J. *Arrest* § 9 (1993); 6A C.J.S. *Arrest* § 20 (1975). On the other hand, we have recognized that the validity of an arrest, without a warrant, does not depend upon whether the accused is ultimately convicted of the crime. *Hefner,* 180 W.Va. at 444, 376 S.E.2d at 650.

This Court, in the case of *State v. Stockton,* 97 W.Va. 46, 124 S.E. 509 (1924), upheld the validity of a warrantless arrest based upon the observation of a justice of the peace of the defendant chasing a woman with a rock in his hand. Based upon that observation the justice of the peace authorized another individual to effect the arrest. This Court stated, in *Stockton,* that the justice of the peace,

> had been informed of a disturbance of the peace before he arrived upon the scene of the trouble, and when he arrived the disturbance was still going on, and he saw a portion, at least, of it. It was his duty as a conservator of the peace to suppress the trouble[.] [3]

97 W.Va. at 50, 124 S.E. at 511 (footnote added). The above language of *Stockton* is consistent with the earlier case of *State v. Lutz,* 85 W.Va. 330, 101 S.E. 434 (1919), syllabus point 9 of which states:

> An offense can be said to be committed in the presence of an officer only when he sees it with his own eyes, or sees one or more of a series of acts constituting [the] offense, and is aided by his other senses or by information as to the others, when it may be said the offense was committed in his presence.

See also *State v. Roberts,* 136 W.Va. 391, 396, 68 S.E.2d 48, 51 (1951); *State v. Rigsby,* 124 W.Va. 344, 349, 20 S.E.2d 906, 909 (1942); *State ex rel. Verdis v. Fidelity & Casualty Company,* 120 W.Va. 593, 597, 199 S.E. 884, 887 (1938); *State v. Thomas,* 105 W.Va. 346, 350, 143 S.E. 88, 90 (1928); *State v. Wills,* 91 W.Va. 659, 665–66, 114 S.E. 261, 264 (1922). As stated in Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* I–170–71 (2nd ed. 1993): "For an offense to be committed in the presence of an officer, it is not necessary that all parts of the offense must be seen by the officer. S/he must be close enough at hand to be aware through some of the senses—sight, smell, hearing, etc.—that the offense is being committed." Moreover, as stated in 1 C.E. Torcia, *Wharton's Criminal Procedure* § 62 (13th ed. 1989): "An offense is deemed committed in the presence of the person making the arrest when the criminal conduct is perceived by one or more of his senses."

In the case before us, we find without merit the assertion of the appellant that the arrest was unlawful. Here, the officers were in the Forsythe home upon Ms. Forsythe's call for help. Both she and the appellant were visibly upset, and, as often the case with domestic disturbances, the circumstances were volatile. At the moment of the alleged assault upon Ms. Forsythe, Officer Ingram was in the kitchen area near her and the appellant. Officer Powell and Officer Mann were in the adjoining living room. As stated above, the Forsythe home is quite small, with the living room and kitchen being separated by a "divider." Officer Powell, the arresting officer, heard the appellant say "I'm gonna kill you bitch" and also heard the sound of the striking of the wall. Furthermore, Officer Powell observed Ms. Forsythe step or jerk back from the kitchen wall. Officer Powell then stepped into the kitchen and told the appellant he was under arrest. The evidence of the State indicates that, at that point, the appellant struggled against

---

**3.** As we recently noted in *State ex rel. Collins v. Bedell,* 194 W.Va. 390 n. 4, 460 S.E.2d 636 n. 4 (1995): "The justice of the peace system was abolished and replaced by the magistrate system in the Judicial Reorganization Amendment of 1974." *See W.Va. Const.* art. VIII, § 10. The *Stockton* case, however, is discussed under the section concerning warrantless misdemeanor arrests in Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* I–171 (2nd ed. 1993).

arrest, and the jury could have properly concluded that the appellant obstructed the officers.[4] Upon those facts, and in view of the authorities cited above, the appellant's argument, that he did not obstruct an officer "in the lawful exercise or discharge of his official duty," is unconvincing.

It should be noted that the arrest and prosecution of the appellant upon the assault charge, upon which he was found not guilty, was pursuant to *W.Va.Code*, 61-2-9(b) [1978], *see* n. 2, *supra*, rather than *W.Va.Code*, 61-2-28 [1994], specifically concerning domestic violence and *W.Va.Code*, 48-2A-14 [1994], a related statute concerning arrest in domestic violence matters. Although we need not definitively or preemptively address the latter two statutes in this case, we recognize that the standards of probable cause to make a warrantless arrest in domestic violence situations, under those statutes, are somewhat more relaxed than in other arrest situations.[5]

Upon all of the above, the final order of the Circuit Court of Mercer County, West Virginia, entered on April 14, 1994, is affirmed.

Affirmed.

BROTHERTON and RECHT, JJ., did not participate.

FOX, Judge, and MILLER, Retired Justice, sitting by temporary assignment.

---

4. The appellant assigns as error the following instruction given to the jury:

> The court instructs the jury that the warrantless arrest of the Defendant by the police officers was a lawful exercise or discharge of their official duties if they had probable cause to believe that the Defendant's conduct in their presence constituted the criminal offense of assault. The existence of probable cause depended on whether, at the moment the warrantless arrest was made, the facts and circumstances within the arresting officers' knowledge *and of which they had reasonably trustworthy information*, were sufficient to warrant a prudent person in believing that the Defendant had committed or was committing the offense.

(emphasis added).

The appellant suggests that the above phrase "and of which they had reasonably trustworthy information" allowed the jury to improperly conclude that the alleged assault need not have occurred in the presence of the officers, as a basis for the arrest. Upon review it appears that, inasmuch as the first sentence of that instruction requires the assault to have been in the presence of the officers, the instruction is arguably misleading. Nevertheless, upon a review of the testimony, other instructions and circumstances of this case, this Court is of the opinion that the above instruction did not contribute to the outcome of the trial, and this assignment of error is without merit. Syl. pt. 2, *State v. Romine*, 166 W.Va. 135, 272 S.E.2d 680 (1980).

5. *W.Va.Code*, 61-2-28 [1994], provides in part:

> (b) *Domestic assault.*—If any family or household member unlawfully attempts to commit a violent injury of another family or household member or unlawfully commits an act which places another family or household member in reasonable apprehension of imme-

diately receiving a violent injury, he or she is guilty of a misdemeanor, and, upon conviction thereof, shall be confined in jail for not more than six months, or fined not more than one hundred dollars, or both fined and confined. *W.Va.Code*, 48-2A-14 [1994], provides in part:

> (a) Notwithstanding any provision of this code, where a family or household member is alleged to have committed a violation of the provisions of subsection (a) or (b), section twenty-eight [61-2-28(a) or (b)], article two, chapter sixty-one of this code against another family or household member, in addition to any other authority to arrest granted by this code, a law-enforcement officer has authority to arrest the alleged perpetrator for said offense when:
>
> (1) The law-enforcement officer has observed credible corroborative evidence that the offense has occurred; and
>
> (2) The law-enforcement officer has received, from the victim or a witness, a verbal or written allegation of facts constituting a violation of section twenty-eight [61-2-28], article two, chapter sixty-one of this code; or
>
> (3) The law-enforcement officer has observed credible evidence that the accused committed the offense.
>
> (b) Credible corroborative evidence means evidence that is worthy of belief and corresponds with the allegations of one or more elements of the offense and may include, but not limited to, the following conditions:
>
> . . . .
>
> (4) *Other conditions.*—Statements by the accused admitting one or more elements of the offense; *threats made by the accused in the presence of an officer*; audible evidence of a disturbance heard by the dispatcher or other agent receiving the request for police assistance; written statements by witnesses.

(emphasis added).