1999-NMCA-099

986 P.2d 482

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Frank SALAS, Sr., Defendant–Appellant.**

**No. 19391.**

Court of Appeals of New Mexico.

May 18, 1999.

Certiorari Denied, No. 25,779, June 21, 1999.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, for Appellee.

Liane E. Kerr, Albuquerque, for Appellant.

## OPINION

WECHSLER, J.

{1}   Defendant Frank Salas, Sr. was convicted in district court of possession of methamphetamine, a fourth degree felony, and sentenced as an habitual offender. He appeals from the district court's judgment and sentence and commitment asserting that: (1) there was inadequate evidence to support his arrest for disorderly conduct; (2) the district court erred in failing to grant a mistrial or admonish the jury regarding the State's improper cross-examination of a witness; and (3) the State failed to meet its burden of proof at the habitual offender proceeding to establish Defendant's identity as the person convicted at trial.   We affirm.

*Facts and Procedural Background*

{2}   Defendant attended a wedding reception at the Tucumcari Convention Center on the evening of July 12, 1997. Officers Tony Alvidrez and Charles Aguirre of the Tucumcari Police Department provided security at the reception. During the course of the evening, Officer Alvidrez had occasion to observe Defendant drinking alcoholic beverages. Officer Alvidrez testified at the hearing on Defendant's motion to suppress that Defendant became increasingly intoxicated as the evening progressed.

{3}   After 11:00 p.m. that evening, both Defendant and Officer Alvidrez were in the lobby of the convention center near the restrooms. Officer Alvidrez testified that he heard someone talking loudly and using profanity. He turned around and saw Defendant talking to "an older lady." He observed

a second "older lady" walking up against the wall on the left side of Defendant trying to avoid Defendant. This woman made eye contact with Officer Alvidrez, looked at Defendant, and then looked back at Officer Alvidrez. Officer Alvidrez understood her actions to mean that Defendant's actions were bothering her.

{4} At that time, Officer Alvidrez testified that he approached Defendant and asked him "to try to keep the profanity down." Defendant then became very angry, continued to get louder and louder, and clenched his fist and walked toward Officer Alvidrez. Officer Alvidrez testified that he then advised Defendant that he was under arrest for disorderly conduct and that Defendant directed obscene language to Officer Alvidrez and put his hands behind his back so that he could not place Defendant under arrest. Officer Alvidrez put Defendant against the wall and secured his hands, and with the assistance of Officer Aguirre, placed Defendant on the ground to physically arrest him. The officers then escorted him to Officer Alvidrez's vehicle.

{5} Defendant presented a different description of the incident. He testified that he had had several prior contacts with Officer Alvidrez which led him to believe that Officer Alvidrez was harassing him. Defendant stated that the first "older lady" was a close family friend whom he had not seen for some time. They were "joking around" and the woman said, referring to Officer Alvidrez, "I'm gonna tell this officer to arrest you." Defendant, who said that he had only two beers that evening, stated that he had not used profanity and responded to the woman by saying: "no, don't joke around with these guys because they will arrest me." Defendant testified that Officer Alvidrez, using an obscenity, asked Defendant if he wanted trouble from him. Using the same obscenity, Defendant inquired of the officer whether he wanted trouble with Defendant. According to Defendant, after he and the woman started to walk off, Officer Alvidrez grabbed Defendant from behind and slapped him down onto the pavement. Officer Aguirre then arrived, and Defendant was slapped against the wall and handcuffs put on him. Defen-

dant denied clenching his fists or making aggressive motions toward Officer Alvidrez and testified that he was not given any warnings about his language or conduct.

{6} Julie Barela, Defendant's sister, and Jennifer Dominguez were in the area and observed all or part of the incident. Barela testified that she saw Defendant and the older woman joking and witnessed the woman hug Defendant and jokingly state that she would call the "cop," referring to Officer Alvidrez. She did not hear profanity. She testified that Officer Alvidrez then grabbed Defendant, slammed him against the wall, and commenced arrest. She did not hear Officer Alvidrez ask Defendant to calm down and she did not see Defendant clench his fists, advance at Officer Alvidrez, or act as the aggressor. Dominguez said that she saw Officer Alvidrez "dogging" Defendant and heard Defendant say "[d]o you want a piece of me?" She observed Officer Alvidrez slam Defendant to the wall.

{7} While booking Defendant at the Quay County Detention Center, the booking and supervising employee observed Defendant first holding and then trying to swallow a clear baggie when Defendant changed clothes. The employee found two baggies of methamphetamine which Defendant claimed that the police planted on him.

{8} Defendant filed a motion to suppress all evidence obtained following his arrest on the ground that he was unlawfully arrested without a warrant and without probable cause. He argued that the admission of the evidence would deny him his right to be free from unreasonable search and seizure guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article 2, Section 10 of the New Mexico Constitution. The district court held a hearing on the motion and, after trial, denied the motion. The district court concluded that Officer Alvidrez had probable cause to arrest Defendant for the misdemeanor crime of disorderly conduct because Officer Alvidrez observed "boisterous, loud, and/or profane behavior by the Defendant which appeared to disturb a member of the public." On appeal, Defendant contests this conclusion.

*Probable Cause for the Arrest*

{9} A police officer may make an arrest for a misdemeanor if the officer has probable cause to believe that an offense is being committed in his or her presence. *See Boone v. State*, 105 N.M. 223, 226, 731 P.2d 366, 369 (1986); *State v. Warren*, 103 N.M. 472, 475–76, 709 P.2d 194, 197–98 (Ct.App. 1985). In ascertaining whether an offense is being committed in an officer's presence, the officer may take into account what the officer observes through use of any of his or her senses. *See State v. Forsythe*, 194 W.Va. 496, 460 S.E.2d 742, 745 (1995) (per curiam) (holding that officer was present when he heard the defendant make offensive statements and observed the victim "step or jerk back from the kitchen wall"); *see also Taylor v. United States*, 259 A.2d 835, 837 (D.C. 1969) ("The officer is not limited to his sense of vision alone, i.e., it is not necessary for the officer to have actually seen every fact constituting the commission of the misdemeanor, but he may utilize all his senses.... Thus a misdemeanor is committed in the presence of an officer when, with the aid of all his senses and what is common knowledge under the circumstances, the officer has knowledge that such is the case." (footnotes omitted)); 3 Wayne R. LaFave, *Search and Seizure* § 5.1(c), at 23–24 (3d ed.1996).

{10} Not only must the officer perceive through his or her senses that an offense is being committed, but the officer must also have a reasonable ground to infer that the suspect is committing an unlawful act to meet the probable cause requirement. Probable cause to justify a misdemeanor arrest exists when the facts and circumstances as observed by the officer through the officer's senses are sufficient to warrant an officer of reasonable caution to believe that an offense is occurring. *See Warren*, 103 N.M. at 475–76, 709 P.2d at 197–98 (noting use of officer's "sensory perceptions" to meet the "in presence" requirement); LaFave, *supra*, § 5.1(c), at 30; *see also State v. Galloway*, 116 N.M. 8, 11, 859 P.2d 476, 479 (Ct.App. 1993) ("An officer has probable cause when facts and circumstances within the officer's knowledge, or on which the officer has reasonably trustworthy information, are suffi-

cient to warrant someone of reasonable caution to believe that an offense has been or is being committed.").

{11} When we apply this probable cause test on appeal, we review the district court's determination as a question of law, and as such, de novo. *See State v. Anderson*, 107 N.M. 165, 168, 754 P.2d 542, 545 (Ct.App. 1988). However, we defer to the fact finder for the factual determination of conflicting facts and use those facts to address the legal issues. *See id.* at 168–69, 754 P.2d at 545–46.

{12} We believe that the district court reasonably could have concluded that Officer Alvidrez had probable cause to arrest Defendant. NMSA 1978, Section 30–20–1(A) (1967) prohibits the following conduct as the petty misdemeanor of disorderly conduct: "engaging in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace." This statutory provision has two elements: the conduct itself and the tendency of the conduct to disturb the peace.

{13} As to Defendant's conduct, Officer Alvidrez testified that he heard "someone talking rather loudly using profanity." He identified the speaker as Defendant. Defendant and certain of his witnesses disputed this description of Defendant's conduct at trial. The district court, however, concluded that Officer Alvidrez observed "boisterous, loud, and/or profane behavior by the Defendant" thereby crediting the testimony of Officer Alvidrez in contrast to the other testimony. We defer to the district court when it weighs the credibility of witnesses and resolves conflicts in witness testimony. *See State v. Roybal*, 115 N.M. 27, 30, 846 P.2d 333, 336 (Ct.App.1992); *see also Anderson*, 107 N.M. at 169, 754 P.2d at 546. Defendant's actions as determined by the district court fit within the prohibitions of Section 30–20–1(A).

{14} As to the second aspect of the definition of the offense, Defendant insists that Officer Alvidrez did not have probable cause to believe that Defendant was engaging in disorderly conduct because it was not reasonable to believe that, as the district court concluded, a member of the public appeared

to be disturbed by Defendant's behavior. Defendant further argues in this regard that Officer Alvidrez acted under pretext when he arrested Defendant after hearing Defendant using loud and profane language. We do not agree with Defendant's positions.

{15} Defendant's objections rest upon the standard of reasonableness. We measure probable cause by applying the standard of whether a police officer of reasonable caution would believe, as applied to this case, that an offense is being committed. *See State v. Goss,* 111 N.M. 530, 534, 807 P.2d 228, 232 (Ct.App.1991). We examine whether Officer Alvidrez acted as a reasonable, cautious officer in effecting Defendant's arrest.

{16} When Officer Alvidrez heard Defendant speaking loudly and using profane language in the course of speaking with a woman in the hallway, he also observed a second woman walking against the wall trying to avoid Defendant. This woman made eye contact with Officer Alvidrez, looked at Defendant, and looked back to Officer Alvidrez. Officer Alvidrez understood this woman's actions, which he observed, to mean that Defendant was bothering her. We agree with the State that the district court could have accepted this understanding of Officer Alvidrez as that of a reasonable officer acting with reasonable caution rather than an "unsupported intuition or an inarticulable hunch" as Defendant suggests. *State v. Galvan,* 90 N.M. 129, 132, 560 P.2d 550, 553 (Ct.App.1977) (stating that "unsupported intuition or an inarticulable hunch does not provide the basis for a reasonable suspicion" to effect an investigatory stop). Rather than a mere hunch or intuition, Officer Alvidrez observed the actions or movements which he articulated in his testimony to the district court. These actions and movements could reasonably be interpreted to indicate that the woman was confused and alarmed by Defendant's actions.

{17} Our Supreme Court has interpreted the language of Section 30–20–1 concerning conduct which tends to disturb the peace to include conduct " 'which, by causing consternation and alarm, disturbs the peace and quiet of the community.' " *State v. Doe,* 92 N.M. 100, 102, 583 P.2d 464, 466 (1978) (quoting *State v. Florstedt,* 77 N.M. 47, 49, 419 P.2d 248, 249 (1966)); *accord State v. James M.,* 111 N.M. 473, 476, 806 P.2d 1063, 1066 (Ct.App.1990); *State v. Oden,* 82 N.M. 563, 565, 484 P.2d 1273, 1275 (Ct.App.1971). "[T]he standard is whether defendant's conduct *tends* to disturb the public peace." *James M.,* 111 N.M. at 476, 806 P.2d at 1066. There is no requirement that the woman Officer Alvidrez observed be actually offended by the comments, *see Oden,* 82 N.M. at 565, 484 P.2d at 1275, or that a crowd must gather in response to Defendant's behavior, *see James M.,* 111 N.M. at 477, 806 P.2d at 1067. The only requirement is that Defendant's actions "disturb the public peace." *Id.* at 476, 806 P.2d at 1066. A reasonable officer could well conclude, while at the scene of this occurrence, that the woman walked against the wall avoiding Defendant because of consternation and alerted Officer Alvidrez to Defendant with her eyes because she was alarmed, and that Defendant's behavior was " 'disturb[ing] the peace and quiet of the community.' " *Doe,* 92 N.M. at 102, 583 P.2d at 466 (quoting *Florstedt,* 77 N.M. at 49, 419 P.2d at 249).

{18} We demand that police officers at the scene of an occurrence act reasonably. We judge reasonableness by an objective standard, mindful that probable cause requires more than a suspicion, but less than a certainty. *See Goss,* 111 N.M. at 534, 807 P.2d at 232; *State v. Copeland,* 105 N.M. 27, 31, 727 P.2d 1342, 1346 (Ct.App.1986). The reasonable officer must have information to believe that criminal conduct probably, not positively, exists. *See Goss,* 111 N.M. at 534, 807 P.2d at 232; *Copeland,* 105 N.M. at 31, 727 P.2d at 1346. Defendant argues that Officer Alvidrez did not act as a reasonable officer would and did not investigate whether, in fact, the woman was bothered. He points out that Officer Alvidrez did not identify the woman, attempt to locate her following the incident, or mention her in his report or statement of probable cause as the reason for arrest.

{19} Defendant cross-examined Officer Alvidrez concerning these inconsistencies in his testimony. The district court, neverthe-

less, believed Officer Alvidrez. As we have stated, the credibility of the witnesses is the province of the district court. *See Roybal,* 115 N.M. at 30, 846 P.2d at 336.

{20} We believe that Officer Alvidrez acted with reasonable caution in light of all the circumstances. He heard Defendant yelling obscenities and observed the woman appearing nervous and uncomfortable. He approached Defendant and asked him to keep the profanity down. Officer Alvidrez had also observed Defendant's boorish behavior throughout the evening, with an increase in volume and frequency as the night progressed. Officer Alvidrez could reasonably conclude that an offense was occurring. *See Warren,* 103 N.M. at 475–76, 709 P.2d at 197–98. When, according to the testimony of Officer Alvidrez, Defendant continued to get louder and louder, clench his fists, and walk toward Officer Alvidrez, the earlier actions of the woman diminished in immediacy as Officer Alvidrez was required to address and deactivate Defendant's subsequent actions. *See Rankin v. Evans,* 133 F.3d 1425, 1436 (11th Cir.1998) ("Probable cause is 'judged not with clinical detachment but with a common sense view to the realities of normal life.'" (quoting *Marx v. Gumbinner,* 905 F.2d 1503, 1506 (11th Cir.1990))).

{21} Defendant further argues that Officer Alvidrez acted under pretext when he arrested Defendant. Defendant claims that Officer Alvidrez did not have reasonable suspicion that the law was being violated. We disagree. We have already concluded that Officer Alvidrez had probable cause to effectuate the misdemeanor arrest because he heard Defendant, and observed the woman skirting the wall and looking at the officer. Thus, there was a valid legal basis for Officer Alvidrez to arrest Defendant.

{22} Additionally, Defendant argues on the basis of *James M.* that the State "must have proven beyond a reasonable doubt that [Defendant] violated the statute with regard to both words *and* conduct." Initially we note that Defendant misstates the issue which is one of probable cause rather than the proof required for a conviction. More importantly, however, *James M.* does not make the distinction Defendant promotes. In that case, the defendant was arguing with another and shouting obscenities, "flailing his arms, pointing, and continuing to get excited." *Id.,* 111 N.M. at 475, 806 P.2d at 1065. The defendant claimed that his speech was protected by the First and Fourteenth Amendments to the United States Constitution. *See id.* Our Supreme Court rejected this claim, concluding that the defendant's "fighting words" were not constitutionally protected. *See id.* at 475–76, 806 P.2d at 1065–66. In concluding that there was sufficient evidence to support the defendant's conviction for disorderly conduct, the Court assumed that the district court relied on both the defendant's speech and conduct. *See id.* at 476–77, 806 P.2d at 1066–67. Section 30–20–1 does not distinguish between speech and conduct. The types of conduct stated in Section 30–20–1(A) that consist of the offense describe speech as well as what generally would be considered to be conduct. Speech is a form of conduct. Defendant does not argue that his speech was constitutionally protected. Therefore, we decline to otherwise differentiate speech from conduct under Section 30–20–1(A).

{23} Lastly, as to this issue, we cannot agree with Defendant that *Doe* controls in this case. In *Doe,* the defendant, a passenger in a vehicle, spoke to police officers in a loud voice, was angry, and had his fists clenched. *See* 92 N.M. at 102, 583 P.2d at 466. However, the defendant did not gesture or move toward the officers, and no crowd was gathering. *See id.* The Court concluded that there was no evidence that the defendant incited belligerent behavior or caused consternation or alarm. *See id.* Our Supreme Court noted: "'[O]ne is not to be punished for nonprovocatively voicing his objection to what he obviously felt was a highly questionable detention by a police officer.'" *Id.* (quoting *Norwell v. City of Cincinnati,* 414 U.S. 14, 16, 94 S.Ct. 187, 38 L.Ed.2d 170 (1973) (per curiam)). The case on appeal involves different circumstances. Defendant was not arrested for his actions toward Officer Alvidrez, other people were present, and the district court found that Defendant disturbed a member of the public. Officer Alvi-

drez had probable cause to arrest Defendant for disorderly conduct.

*Motion for Mistrial*

{24} Manuel Calbert, the father of the bride, testified on Defendant's behalf that he did not see, and no one complained of, Defendant acting in an offensive manner at the wedding reception. On cross-examination, the State established that Calbert was not present in the lobby area when Officer Alvidrez observed Defendant's behavior which resulted in Defendant's arrest. The district attorney then asked Calbert whether it was "fair to say that your own feeling toward the police department are affected by the fact that your son has recently been convicted for possession of methamphetamine?" Defendant objected and asked that the question be stricken from the record and the jury admonished. The district court sustained the objection and did not take any further action. Defendant then moved for a mistrial on the basis of prosecutorial misconduct. The district court denied the motion.

{25} Prosecutorial misconduct occurs when "the prosecutor's improprieties had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. Duffy*, 1998–NMSC–014, ¶ 46, 126 N.M. 132, 967 P.2d 807. We review the denial of a mistrial for prosecutorial misconduct for abuse of discretion. *See id.*

{26} At trial, Defendant argued for a mistrial, asserting that the State lacked a basis for asking the question and could not make an argument that the question would lead to admissible evidence. On appeal, Defendant additionally cites Rule 11–403 NMRA 1999, arguing that relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice. *See also State v. Boeglin*, 105 N.M. 247, 253, 731 P.2d 943, 949 (1987) (noting that the trial court may, "within its sound discretion, exclude reasonably relevant evidence on the ground that its probative value is substantially outweighed by the dangers of unfair prejudice"). To counter these arguments, the State argued below and also on appeal that the district attorney asked the

question "to show the bias and prejudice of the witness," and testimony concerning bias and prejudice is relevant at trial.

{27} We agree with the State that the district court did not abuse its discretion. Defendant raised as a defense that the police officers acted improperly in arresting him and thereafter planting drugs on his person. The credibility of the officers as well as the witnesses testifying concerning the officers' conduct was critical to the fact finder in making assessments about the officers' conduct. Thus, under Rule 11–402 NMRA 1999, any bias or prejudice Calbert may have possessed about police was relevant to the issues being tried. Regardless of this relevance, the district court had the discretion to exclude the evidence if the district court believed that admitting the evidence could cause unfair prejudice to Defendant that outweighed the probative value of the evidence. *See* Rule 11–403. We believe that the district court so acted by sustaining Defendant's objection.

{28} However, a balancing under Rule 11–403 in Defendant's favor does not require a mistrial. For Defendant to demonstrate that the district court abused its discretion by denying a mistrial for prosecutorial misconduct, he must have established that the district attorney did not have a valid basis for the question. *See Duffy*, 1998–NMSC–014, ¶ 46, 126 N.M. 132, 967 P.2d 807. The relevancy of Calbert's credibility belies this position. The district court did not abuse its discretion by denying the motion for a mistrial or by not admonishing the jury.

*Habitual Offender Proceedings*

{29} After Defendant's conviction, the State filed a supplemental criminal information which it subsequently amended so that Defendant could be sentenced as an habitual offender under NMSA 1978, Section 31–18–17 (1993). The district court held a sentencing hearing on March 2, 1998, approximately two and one-half months after Defendant's trial. The district court sentenced Defendant as a four-time habitual offender after finding that upon Defendant's conviction on December 18, 1997, for possession of meth-

amphetamine, Defendant had three previous felony judgments entered against him.

{30} Defendant takes the position that under NMSA 1978, Section 31–18–20 (1983), the State was required to affirmatively prove not only that Defendant was the person previously convicted of the crimes listed in the supplemental information but also that he was the same person convicted in the underlying case in which the sentencing proceedings were taking place. According to Defendant, the State's witnesses did not have personal knowledge of Defendant's conviction in the underlying case and the district court could not take "judicial notice" of Defendant's identity. We disagree with Defendant and believe that the State met its burden.

{31} The State presented the testimony of two of Defendant's supervising probation officers who testified that they were present when Defendant pleaded guilty to, and the court entered judgment against, Defendant for the three prior felony offenses. On cross-examination neither could testify to personal knowledge of the identity of the person convicted on December 18, 1997, for possession of methamphetamine. After the presentation of evidence, the State asked the district court to take judicial notice of the admissions Defendant made during trial that he had felony convictions. Defense counsel objected on the grounds that the State was asking the court to be a witness in the case by identifying Defendant. The district court stated that "[t]he court will consider the evidence submitted herein."

{32} A defendant in an habitual offender proceeding need not admit that he or she is the same person as charged in the habitual offender information. *See* § 31–18–20(B). If, as in this case, the defendant does not make such an admission, the hearing conducted by the district court encompasses the factual determination of whether the defendant is the same person. *See* § 31–18–20(B), (C).

{33} Section 31–18–20(C) requires that the district court find, after the hearing, that the defendant is the same person as charged in the information and that defendant was "in fact convicted of the previous ... crimes as charged" in the information for the habitual offender statute to be applicable.

{34} Defendant misconstrues Section 31–18–20(B) and (C), however, when he claims that he was not properly identified as the person named in the information. The information is brought in the same proceeding as a defendant's underlying case. The conviction has taken place in that underlying case. The statement recognized in Section 31–18–20(B) as to whether the defendant is the same person as charged in the information is a statement as to whether the defendant is the same person who had been previously convicted in the prior offenses charged in the information.

{35} The hearing contemplated by Section 31–18–20(B) occurs if a defendant denies being the same person or remains silent. It is a fact finding concerning the prior offenses. The finding required under Section 31–18–20(C) that the defendant is the same person charged in the information addresses the necessity for the district court to find that the person charged in the prior offenses was the same defendant in the underlying case and not, for example, another person by the same name. The additional finding under Section 31–18–20(C) that the defendant "was in fact convicted of the previous crime or crimes as charged" pertains to the required district court finding that there was a conviction in the previous cases charged in the information as opposed to some other disposition. The State makes a prima facie case under Section 31–18–20 when it proves that the defendant has been convicted of the prior offenses. *See State v. Garcia,* 92 N.M. 730, 732–33, 594 P.2d 1186, 1188–89 (Ct.App.1978); *State v. Dawson,* 91 N.M. 70, 72–73, 570 P.2d 608, 610–11 (Ct. App.1977). Certainly, the defendant may assert that he or she was not convicted in the underlying case, but the defendant must do so affirmatively to overcome the State's prima facie case.

{36} Additionally, we do not agree with Defendant that the district court is impotent to consider Defendant's trial. Although neither probation officer was present when Defendant was convicted on December

18, 1997, the trial judge was. The trial judge presided over Defendant's trial, received the verdict from the jury, and recorded the verdict. The trial judge does not act as a witness when he or she acts upon the proceedings which have transpired in the district court. Indeed, trial judges act upon just such proceedings when they determine if mitigating or aggravating circumstances exist to alter a basic sentence. *See* NMSA 1978, § 31–18–15.1(A) (1993) (stating that the court shall "take whatever evidence or statements it deems will aid it in reaching a decision" in altering basic sentence). In making such determinations, the trial judge carries over to sentencing the knowledge he or she has obtained and the observations he or she has made during the course of the trial. The judge sentencing an habitual offender is entitled to do the same.

*Conclusion*

{37}  For the above stated reasons, we affirm the judgment and sentence and commitment.

{38}  IT IS SO ORDERED.

APODACA and BOSSON, JJ., concur.