This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                                                 **No. 35,084**

**TIFFANY BROWN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean Jr., District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Becca Salwin, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**SUTIN, Judge.**

{1}	Defendant Tiffany Brown appeals from her conviction pursuant to conditional plea of possession of a controlled substance, fourth degree, contrary to NMSA 1978, Section 30-31-23(E) (2011). [RP 86-87] In our notice of proposed disposition, we proposed to summarily affirm. [CN 1, 6] Defendant filed a timely memorandum in opposition and motion to amend her docketing statement, which we have duly considered. Remaining unpersuaded, we affirm Defendant's conviction.

**Issue 1: Reasonable Suspicion for Patdown**

{2}	In her memorandum in opposition, Defendant continues to argue that the officer lacked the necessary reasonable suspicion to conduct the patdown search of Defendant. [MIO 5-9] As we set forth in our notice of proposed disposition, "[t]o justify a frisk for weapons, an officer must have a sufficient degree of articulable suspicion that the person being frisked is both armed and presently dangerous." *State v. Vandenberg*, 2003-NMSC-030, ¶ 22, 134 N.M. 566, 81 P.3d 19 (emphasis omitted). [CN 5] We relied on facts in the docketing statement and in the district court's findings of fact from the suppression hearing to propose to conclude that Officer Prince had a sufficient degree of articulable suspicion that Defendant was both armed and presently dangerous when she frisked her. [CN 3-4] Specifically, the facts we found pertinent were that Defendant had been identified as a person with prior contact with police and was listed in the police system as dangerous [DS 2; RP 54 (¶ 3)];

2

when Officer Prince made contact with Defendant, she was acting strange and appeared intoxicated [DS 2-3; RP 54-55 (¶ 4)]; and Defendant did not respond to Officer Prince's first two questions about whether she had weapons and, instead, kept putting her hands in her pockets, despite being asked not to, and wrapped herself in a blanket. [DS 3; RP 54-55 (¶¶ 4-6); CN 5-6] We proposed to conclude that this evidence shows that Officer Prince had a sufficient degree of articulable suspicion that Defendant was both armed and presently dangerous. [CN 6]

{3}     In her memorandum in opposition, Defendant reiterates the facts, characterizing them somewhat differently and more defense-friendly, based on the record and on "correspondence with trial counsel[.]" [MIO 2-4; *see also* MIO 2 n.1] Defendant additionally attests that she was submissive, compliant, and calm; that she seemed disoriented and confused; that she was homeless and cold, explaining why she was "snuggling up inside her sleeping bag under the rain"; and that her finger tips were visible as she gripped her sleeping bag around her. [MIO 3-4] Defendant also contends the district court was concerned with the officer's purportedly confusing, incomplete, and at times self-contradictory testimony. [MIO 4]

{4}     However, it is well settled that it is for the fact-finder to determine where the weight and credibility lie, which the district court did as set forth in its findings of fact and conclusions of law, and we do not re-weigh the evidence on appeal or substitute

3

our judgment for that of the fact-finder. [RP 54-55] *See State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lie); *see also State v. Griffin*, 1993-NMSC-071, ¶ 17, 116 N.M. 689, 866 P.2d 1156 ("[An appellate court] does not weigh the evidence and may not substitute its judgment for that of the fact[-]finder so long as there is sufficient evidence to support the verdict." (internal quotation marks and citation omitted)). Moreover, despite Defendant's characterization in her memorandum in opposition, the district court was not required to accept her version of the facts. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("[T]he jury is free to reject [the d]efendant's version of the facts.").

**{5}** Defendant additionally analogizes the present case with other cases that ultimately found that a slow response, bulky clothes, or fully concealed hands did not justify a frisk. [MIO 6] However, the cases are inapposite. As set forth by Defendant, in *State v. Jason L.*, 2000-NMSC-018, ¶¶ 3-4, 129 N.M. 119, 2 P.3d 856, the defendant was wearing a bulky coat in July, nervously fidgeted his hands around his hip under his coat, and at first ignored the officer's repeated questions about whether he had any weapons. [MIO 6] However, in that case, no relevant activity had been reported in the area that evening, the defendant was not listed in the system as a

4

person with prior contact with police or listed in the police system as dangerous, and there is no evidence that, after the officers made contact, the defendant kept putting his hands *in* his pockets, despite being asked not to, or wrapping himself in a blanket. *See id.* We are therefore unpersuaded that the Court's conclusion in *Jason L.* that there was not sufficient evidence that the officers' suspicion of the defendant was reasonable, *see id.* ¶ 23, changes the result in the present case.

**{6}** Defendant also cites to *State v. Gutierrez*, 2008-NMCA-015, 143 N.M. 522, 177 P.3d 1096. [MIO 7] In *Gutierrez*, the defendant was carrying a pair of pants over his left arm, acted nervously when the officers approached him, backed away from the officers, and moved his left hand to his hip area. *Id.* ¶¶ 2-3. However, in that case, there is no indication that there was evidence of a call based on an "unwanted person," that the defendant was listed in the system as a person with prior contact with police or listed in the police system as dangerous, or that, after the officers made contact, the defendant put his hand *in* his pockets, despite being asked not to, or wrapping himself in a blanket. *See id.* We are therefore similarly unpersuaded that the Court's conclusion in *Gutierrez* that there was not sufficient evidence that the officers' suspicion of the defendant was reasonable, *see id.* ¶¶ 17-20, changes the result in the present case.

5

**{7}**     Defendant additionally cites to *State v. Boblick*, 2004-NMCA-078, 135 N.M. 754, 93 P.3d 775. [MIO 7-8] In *Boblick*, the officers were dispatched regarding a suspicious car, the defendant appeared dazed and did not respond verbally to the officers but complied with their requests, and a check revealed no information about the defendant. *Id.* ¶ 13. Again, in that case, there is no indication that there was evidence of a call based on an "unwanted person," that the defendant was listed in the system as a person with prior contact with police or listed in the police system as dangerous, or that, after the officers made contact, the defendant put his hand *in* his pockets, despite being asked not to, or wrapping himself in a blanket. *See id.* In fact, one officer in *Boblick* testified that his only rationale for searching the defendant was because "he considers any person with whom he comes into contact to be an unknown threat." *Id.* This Court concluded that, "[a]lthough this may be a prudent assumption, this assumption alone cannot justify a patdown." *Id.* Again, based on the facts, we are unpersuaded that the Court's conclusion in *Boblick* that there was not sufficient evidence that the officers' suspicion of the defendant was reasonable, *see id.*, changes the result in the present case.

**{8}**     Finally, Defendant argues that the fact that she was identified as "a safety concern" should not impact the decision to frisk her. [MIO 8-9] However, whether a notation in the system that a defendant is "a safety concern," on its own, may be

6

insufficient to justify a frisk is not the issue in this case. As our Supreme Court indicated in *Vandenberg*, we consider the totality of the circumstances regarding whether a suspect is reasonably deemed armed and dangerous. 2003-NMSC-030, ¶ 22. Moreover, in determining whether a frisk is warranted, "the officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent officer in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* ¶ 23 (alterations, internal quotation marks, and citation omitted). Based on the evidence in the present case—that Defendant had been identified as a person with prior contact with police and was listed in the police system as dangerous; that, when Officer Prince made contact with Defendant, she was acting strange and appeared intoxicated; and that Defendant did not respond to Officer Prince's first two questions about whether she had weapons and, instead, kept putting her hands in her pockets, despite being asked not to, and wrapped herself in a blanket—we hold that a reasonably prudent officer in these circumstances would be warranted in the belief that his or her safety or that of others was in danger. *See id.* Accordingly, we conclude that the district court did not err in so concluding. [RP 55 (¶ 2)]

**Issue 2: Reasonable Suspicion for Detention**

7

**{9}** In her memorandum in opposition, Defendant also continues to argue that the officer lacked the necessary reasonable suspicion to detain Defendant. [MIO 9-11] As we set forth in our notice of proposed disposition, "[a]n officer may stop and detain a citizen if the officer has a reasonable and articulable suspicion that the person stopped is or has been involved in criminal activity." *State v. Murry*, 2014-NMCA-021, ¶ 29, 318 P.3d 180 (alteration, internal quotation marks, and citation omitted). [CN 2] "The critical question . . . is whether the officer had an individualized suspicion that the defendant[ was] violating any law when he [or she] subjected the defendant[] to detention." *Id.* (omission in original) (alterations, internal quotation marks, and citation omitted).

**{10}** In our notice of proposed disposition, we again relied on facts in the docketing statement and in the district court's findings of fact from the suppression hearing to propose to conclude that Officer Prince had reasonable suspicion that Defendant had committed or was committing the crime of trespass. [CN 3-5] Specifically, the facts we found pertinent were that, on the date in question, Officer Prince was dispatched to address an "unwanted person" who was reported to have been walking around outside of a residence, and when Officer Prince arrived on the scene, she ultimately found Defendant walking near a residence, acting strange and appearing intoxicated. [DS 2-3; RP 54-55; CN 3-5] We proposed to conclude that this evidence was

8

sufficient to provide an officer with reasonable suspicion that Defendant had committed or was committing the crime of trespass. [CN 5] In her memorandum in opposition, Defendant reiterates the facts, but again characterizes them differently—more defense-friendly. [MIO 2-4, 10-11; *see also* MIO 2 n.1] Defendant also argues that "any such suspicion was dispelled when the officer arrived to the location of the call[] and found a number of people who all said they had not seen [Defendant] or a possible trespass." [MIO 10-11]

{11} However, as we have stated earlier in this Opinion, it is for the fact-finder to determine where the weight and credibility lie, and we do not re-weigh the evidence on appeal or substitute our judgment for that of the fact-finder. *See Griffin*, 1993-NMSC-071, ¶ 17; *Salas*, 1999-NMCA-099, ¶ 13. Indeed, although the officer spoke to some people who had not seen Defendant or a trespass [MIO 10-11], the officer may have nevertheless concluded that a trespass was occurring outside of the awareness of those "people[,] who appeared to be influenced by drugs." [MIO 3] As indicated earlier, the district court was not required to accept Defendant's version of the facts. *See Rojo*, 1999-NMSC-001, ¶ 19. Based on the evidence in the present case—that Officer Prince was dispatched regarding an "unwanted person" who was reported to have been walking around outside of a residence, and when Officer Prince arrived on the scene, she ultimately found Defendant walking near a residence, acting

strange and appearing intoxicated—we hold that Officer Prince had reasonable suspicion that Defendant had committed or was committing trespass when she subjected Defendant to detention. *See Murry*, 2014-NMCA-021, ¶ 29. Accordingly, we conclude that the district court did not err in so concluding.

**Issue 3: Due Process**

{12} Finally, Defendant requests leave to amend her docketing statement to add the following issue: that Defendant was denied a fair suppression hearing when the State withheld the only officer's lapel video—the best direct and impeachment evidence of Defendant's unlawful arrest—until after the suppression hearing was over. [MIO 11-13] This issue was not preserved so Defendant raises it pursuant to the doctrine of fundamental error. [MIO 11] However, Defendant does not explain what the lapel video shows or how it actually undermines the officer's testimony. [MIO 12-13] Rather, Defendant only contends that the officer's testimony was the only evidence proffered at the hearing and that the video "would have firmly established that the officer acted unlawfully[] and impeached the officer's claims[.]" [MIO 12] These statements are unsupported by any explanation as to *how* it would have established the officer acted unlawfully or *how* it would have impeached the officer's claims. Thus, even assuming without deciding that the State's failure to provide the lapel video prior to the suppression hearing was error, Defendant has failed to show that there is a

reasonable probability that, had the video been disclosed, the result of the proceeding would have been different. *See State v. Romero*, 2013-NMCA-101, ¶ 15, 311 P.3d 1205 (reiterating that "[e]vidence is material under *Brady* [*v. Maryland*, 373 U.S. 83 (1963),] only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different" and concluding that, lacking materiality, the evidence is not deemed to be "tainted with fundamental unfairness" (alteration, internal quotation marks, and citations omitted)).

{13}     Thus, to the degree any error exists, we conclude that it does not rise to the level of fundamental error. *See State v. Barber*, 2004-NMSC-019, ¶¶ 8, 14, 135 N.M. 621, 92 P.3d 633 (stating that the "doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice" and "is to be resorted to in criminal cases only for the protection of those whose innocence appears indisputably[] or open to such question that it would shock the conscience to permit the conviction to stand" (internal quotation marks and citation omitted)). We therefore deny Defendant's motion to amend the docketing statement as non-viable. *See State v. Moore*, 1989-NMCA-073, ¶¶ 42, 45, 109 N.M. 119, 782 P.2d 91 (stating that a viable issue must be colorable or arguable and that "we should deny motions to amend that raise issues that are not viable"), *superseded by rule on other grounds as stated in State v. Salgado*, 1991-NMCA-044, ¶ 2, 112 N.M. 537, 817 P.2d 730; *cf. State v.*

11

*Sommer*, 1994-NMCA-070, ¶ 11, 118 N.M. 58, 878 P.2d 1007 (denying a motion to amend the docketing statement based upon a determination that the argument sought to be raised was not viable). Nonetheless, we note, as we did in *Romero*, that, "[a]lthough . . . [the d]efendant's request in this regard was tardy, . . . the [s]tate is obligated to make a reasonably diligent effort to comply with a legally proper discovery request and may not obstruct another party's access to evidence." 2003-NMCA-101, ¶ 18 (internal quotation marks and citation omitted).

{14}    Accordingly, for the reasons stated in our notice of proposed disposition and herein, we affirm Defendant's conviction.

{15}    **IT IS SO ORDERED.**


                                    _____
                                    **JONATHAN B. SUTIN, Judge**


**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**


_____
**M. MONICA ZAMORA, Judge**


12