This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-40277**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**GENIEVA MORENO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Leland M. Churan, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ATTREP, Judge.**

**{1}**     This matter was submitted to the Court on the brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases Involving the Law Offices of the Public Defender, From the Twelfth Judicial District Court in *In re Pilot Project for Criminal Appeals*, No. 2021-002, effective September 1, 2021. Following consideration of the brief in chief, the Court assigned this matter to Track 2 for additional briefing. Now having considered the brief in chief, answer brief, and reply brief, we affirm for the following reasons.

**{2}**     Defendant contends that the evidence was insufficient to support her conviction for contributing to the delinquency of a minor (CDM). [BIC 9] "[A]ppellate courts review sufficiency of the evidence from a highly deferential standpoint." *State v. Slade*, 2014-NMCA-088, ¶ 13, 331 P.3d 930 (text only). "All evidence is viewed in the light most favorable to the state, and we resolve all conflicts and make all permissible inferences in favor of the jury's verdict." *Id.* (text only). "We examine each essential element of the crimes charged and the evidence at trial to ensure that a rational jury could have found the facts required for each element of the conviction beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). "[A]ppellate courts do not search for inferences supporting a contrary verdict or re-weigh the evidence because this type of analysis would substitute an appellate court's judgment for that of the jury." *Id.* (internal quotation marks and citation omitted).

**{3}**     We look to the jury instructions to determine what the jury was required to find in order to convict Defendant beyond a reasonable doubt. *See State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 ("The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (text only)). The jury instructions for CDM required the State to prove beyond a reasonable doubt that (1) Defendant shoplifted; (2) this caused or encouraged a minor to commit the offense of shoplifting; (3) the minor was under the age of eighteen; and (4) this happened in New Mexico on or about March 28, 2020. [RP 109] The jury was also instructed on an accomplice liability theory for shoplifting, which provided, (1) "[D]efendant may be found guilty of a crime even though [D]efendant did not do the acts constituting the crime[] if the [S]tate proves to your satisfaction beyond a reasonable doubt each of the following elements": (1) "[D]efendant intended that another person commit the crime"; (2) "[a]nother person committed the crime"; and (3) "[D]efendant helped, encouraged, or caused the crime to be committed." [RP 112]

**{4}**     The briefs indicate the following material evidence was presented at trial. A loss prevention officer (the officer) testified that he was in the housewares section of Walmart patrolling for shoplifting activity because the store had recently experienced an uptick in shoplifting. [BIC 1] Specifically, the store had experienced an increase in "ticket switching," which is the process of taking the barcodes off of expensive items and replacing them with barcodes from cheaper items. [BIC 1] This will result in the more expensive item ringing up at the checkout register for the price of the cheaper item. [BIC 1-2] The officer testified that this was frequently happening with plastic bowls, plates, and cups because they are sold for fifty cents each. [BIC 2]

**{5}**     On the day of the incident, the officer testified that he observed Defendant and her fourteen-year-old daughter shopping in the housewares section. [BIC 2] The officer observed Defendant holding the handle of the shopping cart, directly facing her daughter, while her daughter bent into the cart and removed the labels off of some plastic bowls and plates in their cart. [BIC 2] The officer continued to observe the pair as they moved from aisle to aisle, eventually ending up in the toy aisle, where he saw someone discard the plastic bowls and plates on a toy shelf. [BIC 2] The State's answer brief indicates that, while the officer could not tell who actually placed the bowls on the

shelf, he did see Defendant handling the plastic plates and bowls in the toy aisle prior to them being discarded. [AB 3] Defendant's reply brief does not contradict this fact.

**{6}** The officer continued to monitor Defendant and her daughter as they approached the self-checkout stand and began to scan and bag their items. [BIC 3] Defendant primarily scanned the items in the cart while her daughter primarily bagged items, though Defendant's daughter did scan some of the items. [BIC 3] Defendant paid for the entire transaction on a debit card, received cash back, and began to leave the store with her daughter when she was stopped by the officer. [BIC 3] The officer introduced himself, explained the situation, and asked Defendant and her daughter to follow him back to the loss prevention office. [BIC 3] The officer then took Defendant's receipt to itemize and compare all the items in her cart with those items listed on the receipt, eventually concluding that there were a total of nine items that were ticket switched and eleven items that were not scanned at all in Defendant's cart. [BIC 4]

**{7}** Evidence was presented at trial that the officer's report indicated that Defendant admitted to shoplifting, though he could not recall at trial what specifically was said to him by Defendant. [BIC 4] The officer also testified that Defendant and her daughter stayed together the entire time the officer observed them. [AB 5] On cross-examination, the officer stated that he did not see Defendant and her daughter actively communicating, nor did he see Defendant ticket switch any items herself. [BIC 5]

**{8}** Viewing this evidence in the light most favorable to the State, resolving all conflicts and making all permissible inferences in favor of the jury's verdict, we conclude that there was sufficient evidence to support the jury's verdict beyond a reasonable doubt that Defendant committed CDM. *See Slade*, 2014-NMCA-088, ¶ 13; *see also State v. Flores*, 2010-NMSC-002, ¶ 19, 147 N.M. 542, 226 P.3d 641 (stating that "circumstantial evidence alone can amount to substantial evidence" and that "intent is subjective and is almost always inferred from other facts in the case" (text only)); *State v. Michael S.*, 1995-NMCA-112, ¶ 7, 120 N.M. 617, 904 P.2d 595 (stating that "[i]ntent need not be established by direct evidence, but may be inferred from the [defendant]'s conduct and the surrounding circumstances").

**{9}** Moreover, although Defendant implies that she did not know that her daughter was shoplifting and ticket switching items while they were shopping, the jury was free to reject Defendant's version of the facts. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We disagree with Defendant's assertion that the jury was forced to engage in improper speculation to reach a guilty verdict based on the evidence presented. *See State v. Notah*, 2022-NMCA-005, ¶ 9, 503 P.3d 418, 423 (noting that "[p]roof of a fact may be based on reasonable inferences from the evidence, but it may not be based on pure speculation"), *cert. denied* (S-1-SC-39016). Here, the evidence showed that Defendant remained in close proximity to her daughter while her daughter actively engaged in ticket switching activities, even handling some of the ticket switched items herself in the toy aisle. [BIC 2; AB 3] Further, Defendant pushed the cart, scanned the majority of the items at the self-checkout register, and paid for all the items herself. [BIC 3] Finally, evidence was presented that the officer's report indicated that

Defendant admitted to shoplifting the items. [BIC 4] The jury could have legitimately relied on this evidence to infer that Defendant was aware of and intended to facilitate her daughter's activities. *See State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (explaining that it is for the jury to resolve any conflicts and determine weight and credibility in the testimony). We do not reweigh the evidence, and we may not substitute our judgment for that of the fact-finder, as long as there is sufficient evidence to support the verdict. *State v. Griffin*, 1993-NMSC-071, ¶ 17, 116 N.M. 689, 866 P.2d 1156. Accordingly, we conclude that Defendant's conviction for CDM is supported by sufficient evidence. *See State v. Lozoya*, 2017-NMCA-052, ¶ 21, 399 P.3d 410 (affirming a defendant's conviction for CDM based largely on circumstantial evidence).

**{10}** For the foregoing reasons, we affirm Defendant's conviction.

**{11}   IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JACQUELINE R. MEDINA, Judge**